## NESMITH et al. v. MAGNOLIA PETROLEUM CO.

### No. 8107.

Court of Civil Appeals of Texas. Austin.
April 24, 1935.

Mark Callaway, of Brownwood, for appellants.

A. S. Hardwicke, of Dallas, and McCartney & McCartney, of Brownwood, for appellee.

McCLENDON, Chief Justice.

W. C., Olen, and J. B. Nesmith sued the Magnolia Petroleum Company for compen-satory damages, the result of injuries to their persons and property, caused by the explosion of gasoline. The explosion was due to ignition of gasoline spilled on a motor tractor in the process of filling the supply tank from a drum container by means of a pump supplied by defendant. The latter's liability is predicated upon an alleged defect in the pump consisting of a missing nozzle at the end of the hose designed to fit into the opening in the supply tank. The trial court sustained two special exceptions to the petition, urging that it (1) failed to show that the injuries sued for were "the proximate legal result of the breach of any duty either contractual or as the result of negligence owing by the defendant to the plaintiffs, or either of them"; and (2) that it affirmatively showed that plaintiffs (a) assumed the risk, and (b) were contributorily negligent. Plaintiffs declined to amend, and judgment of dismissal was rendered; from which plaintiffs appealed.

The petition alleges the following:

The three plaintiffs were all interested in the operation of a grain threshing outfit consisting of a tractor and grain separator using gasoline as motor fuel. Two of the plaintiffs were owners of the outfit. Defendant was engaged in the sale and distribution of oil and gasoline. On or about June 20, 1933, defendant agreed to deliver to plaintiffs, at places designated by the latter, gasoline in 54-gallon steel drums to be used in the threshing business during the 1933 season, and (as part of the consideration for the purchase) to furnish plaintiffs with a pump in good working order, and suitable for the purpose for which it was to be used, to pump the gasoline from the iron barrels, or drums, into plaintiffs' tractor tank.

The other relevant portions of the petition read:

"It was agreed and understood at the time between the plaintiffs and defendant that the furnishing of said pump was necessary, on account of the fact that said iron barrels, or drums, weigh about 75 or 100 pounds and when full of gasoline they would weigh about 300 pounds each and are very difficult to handle, and it is impractical to get the gasoline from the barrels into a tractor tank otherwise than by means of the said pump.

"Plaintiffs allege it is well known to the defendant, its agents and employees aforesaid, what constitutes such character of

722

pump in good condition as the defendant agreed to furnish plaintiffs for the purpose of pumping gasoline into the tank of the tractor. That said pump consists in part of a hose some inch and a quarter in diameter and some eight or ten feet long, with a tapering metal nozzle at the outer end thereof, for the purpose of inserting the nozzle into the gasoline tank on the tractor, or such other container as may be used. That such nozzle is very necessary and is the usual and customary equipment supplied for use in connection with said pump and hose.

"That on the day the plaintiffs started to operate the thrashing machine and at the beginning of said thrashing season and when they were ready and prepared to begin said work, the defendant delivered to the plaintiffs six (6) barrels, or drums, of gasoline and at said time attempted to deliver the pump also, which the defendant has agreed it would deliver in a good mechanical condition for the purpose of filling the tractor tank. That the pump, as delivered, was defective and unfit for the purpose for which it was designed and was not the character of pump the defendant had agreed to deliver to the plaintiffs for said purpose, as there was no nozzle on the end of the hose. Defendant's agents and employees agreed that it would immediately send out to the plaintiffs, some fifteen miles in the country, the nozzle which defendant had agreed to furnish.

"The plaintiffs were ready to begin work and the parties, for whom they had agreed to thrash grain were insisting on them beginning work at once, and plaintiffs attempted to use said pump and hose without the nozzle, as aforesaid. There was a metal end, or instrument, on the end of the hose with threads thereon designed for the purpose of screwing the nozzle on, but that said hose and the threaded instrument to be inserted in the hole of the tractor gasoline tank could only be used and the gasoline pumped in the tractor tank at the risk of spilling some of the gasoline and causing a fire or explosion.

"Plaintiffs allege that the defendant carelessly and negligently failed and refused to send out to the plaintiffs the nozzle, as they had promised to do. That defendant's employees, as aforesaid, knew the urgent necessity that the plaintiffs had for said instrument and knew that they would have to proceed with their thrashing work; and also knew that the said gasoline was a highly explosive, dangerous and volatile substance; and that using the same and transferring it from the barrels to plaintiffs' tractor tank would be, under the circumstances attended with great danger of an explosion of said gasoline and with great danger to the plaintiffs. That, however, with such knowledge on defendant's part, its agents and employees wholly failed and refused to furnish the instrument, which had been promised to plaintiffs, and the plaintiffs were forced to use the instrument furnished to the best of their ability and with the best care they could to avoid danger to themselves and to their property. And it reasonably appeared to the plaintiffs, under all the circumstances, that by the use of a high degree of care, said defective pump could be used, without danger to plaintiffs.

"That by exercise of due care, under the circumstances, plaintiffs had filled the tractor tank several times, but on or about the 29th day of June, A. D., 1933, and while in the exercise of proper care in filling said tractor some gasoline spilled and became ignited in some manner unknown to the plaintiffs and two barrels of gasoline caught fire and exploded and an empty barrel, sitting near the two full barrels of gasoline, exploded and threw gasoline all over the face, arms, hands and clothing of all three of these plaintiffs. * * *

"That said gasoline is an inherently dangerous substance to use, it is highly inflammable and easily ignited, and the instruments designed for transferring gasoline from one container to another, which the defendant volunteered and agreed to furnish to the plaintiffs for their use, is especially designed to transfer said substance safely from the barrels to any container, all of which facts were well and fully known to the defendant, its agents and representatives, at the time they agreed to furnish the plaintiffs said pump and instruments. That the defendant, its agents and representatives, knew, or in the exercise of ordinary care and diligence should have known, that the use of the instrument furnished by them, and used around plaintiffs' machinery and tractor, in the ordinary course of plaintiffs' occupation would be attended with great danger of fire and explosion from spilled gasoline from the plaintiffs' attempting to use the instrument furnished them. That the use that plaintiffs made of said instruments and the manner of their use, was used to the best of their

ability, and with due care to avoid danger, and the damage they were caused and the injuries and suffering occasioned them and the property loss above mentioned was the direct and approximate result of defendant's negligence in failing to furnish the proper appliances and the kind of appliances that it had agreed to furnish to the plaintiffs in the manner above set out, and defendant's said carelessness and negligence was the proximate cause of all of the plaintiffs' loss and damage."

▮ The elementary legal principles applicable to the fact situation presented in the petition are embodied in section 388, vol. 2 of the American Law Institute's Restatement of the Law of Torts, reading:

"One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

These general principles apply alike to donors, lenders, and lessors of chattels. Defendant falls within the last named class.

▮ Conceding the breach of duty arising from the contractual obligation to supply the nozzle, or (stated differently) to supply a pump with a nozzle, we think it is clear that no liability for the alleged injuries is shown as a proximate result of such breach.

The volatile, inflammable, and explosive properties of gasoline are matters of most general common knowledge. It is but stating the obvious to aver that every normal person of high-school age or over, of average mentality and ordinary experience, is presumed to have a general practical knowledge of these properties. The suit is not predicated upon any lack of such knowledge on plaintiffs' part; or on any duty to instruct or warn them on that of defendant. On the contrary, it affirmatively appears from the petition, if not expressly so, at least by necessary implication, that plaintiffs were experienced in the operation of the outfit which required the constant use and handling of gasoline, and knew its properties in these regards. The pump was a simple device. They knew how to operate it. They also knew that the nozzle was missing, that it was an essential part of the pump for the purposes for which it was supplied, and that the hose was too large to be inserted in the supply tank without the nozzle appliance. They were therefore fully cognizant of whatever risk of spilling gasoline attached to use of the pump in this condition and of any consequent danger of ignition or explosion. The pump was supplied for their exclusive use and was under their unsupervised and undirected control. They could use it or not as they saw fit. And their mode of use and the conditions surrounding it were matters entirely of their own voluntary choosing. There is no legal causal relation between defendant's dereliction of duty and the explosion; whether the dereliction be properly analyzed as negative in a failure to supply the nozzle as agreed, or affirmative in supplying a pump without a nozzle. The situation in no essential differs from a failure to supply any pump at all, as agreed, and an attempt on the plaintiffs' part to fill the supply tank by some other means, resulting in a like casualty. There is no legal causal connection between defendant's breach of duty and the explosion. The sole proximate cause of the injury in legal contemplation was the action of plaintiffs in voluntarily exposing themselves to a known danger. In this instance a danger of their own creation. Defendant's dereliction was only incidental and passive, and at most only afforded the occasion for the injury.

The fact that defendant knew of the urgent necessity for use of the pump does not alter the legal relation of the parties. Any loss as the result of unreasonable delay in furnishing the pump under the circumstances would be recoverable as consequential damages within the contemplation of the parties in making the contract. But its use, and any injury resulting therefrom, under the circumstances detailed in the petition, cannot be legally attributable to defendant's alleged act of omission or commission.

Whether use of the pump in the manner and under the conditions alleged constitut-

ed negligence as a matter of law becomes immaterial under the above holding.

The doctrine of assumed risk applies only to the relation of master and servant.

The trial court's judgment is affirmed.

Affirmed.