**LIOSSIS, Appellee, v. CAVALRY RIDING ACADEMY CO., Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21220.   Decided April 1949.

Krueger, Gorman & Davis, Cleveland, for appellee.
Crossen & Hurd, Cleveland, for appellant.

(DOYLE, J, of the Ninth District; sitting by designation in the Eighth District.)

**OPINION**

By DOYLE, J.

This is an appeal from a judgment of the Court of Common Pleas of Cuyahoga County, for $10,000, in favor of Katharine

N. Liossis and against The Cavalry Riding Academy Company.

It appears that on May 3, 1946, the complainant, a 20-year-old art student, rented a horse and equipment from the defendant (which operated a saddle horse rental establishment for the general public), for the purpose of riding; after the charge was paid, the defendant's groom brought forth a saddled and bridled horse to a mounting platform, from which the animal was mounted by the plaintiff; the horse was then ridden at a walk four or five times around a ring, and then was directed across a highway and onto a bridle path; after a short distance, the horse commenced to trot, at which time the saddle (English riding saddle) began to slip and turn to the left; the rider thereupon took her left foot out of the stirrup, preparatory to throwing herself off, when her right foot became caught in the right stirrup. She fell from the horse's back, with the saddle turning to a position beneath the animal's belly and her right foot still engaged in the right stirrup; the horse then became frightened, commenced to gallop, and dragged the rider for about 100 feet. Severe and serious injuries resulted.

It was claimed in the petition—and evidence was offered for the purpose of proving—that the defendant was negligent (1) in failing to have the girth of the saddle securely tightened, and (2) in failing to inspect the equipment for proper adjustment before hiring it out to the plaintiff; and that as a proximate result of such failures, the plaintiff was injured.

Among the errors claimed for which reversal is sought, are:

"1. In submitting the case to the jury on the question of failure to inspect the equipment for proper adjustment before hiring it out to plaintiff.

"2. In submitting * * * the allegation of failing to have the girth of the saddle securely tightened."

It is claimed that there is a "complete failure on (plaintiff's) part to sustain the burden of proof * * *."

Examination of the record reveals the following testimony of the plaintiff:

"Q. How did you mount the horse?
A I mounted on the block.
* * *
Q. What did anybody do if anything?
A. He adjusted the stirrup for me.
Q. Did the groom adjust the stirrup for you while you were on the block?

A. While I was on the block.

* * *

Q. By adjusting the stirrup, what do you mean?

A. Well, he made them shorter, you know, and pulled them down to fit my feet, of course, on account of my height.

Q. Was there any conversation between you and the groom?

A. No.

Q. None at all about the stirrup?

A. No. I just asked him if it was all right to mount and he said, 'Yes.'

Q. You asked him what was all right? Did you indicate by motion or words?

A. Well, the saddle.

THE COURT: I did not hear.

THE WITNESS: I asked was the saddle, was it all right; whether I could mount. He said, 'Yes.'

Q. He said the saddle and everything was all right. What did you mean by everything?

A. Well, the stirrup and saddle, the rest of the gear on a horse.

Q. What did he say to you after that?

A. He said it was all right. It was ready for me to mount.

Q. What did you do then?

A. I mounted.

* * *

Q. Going back just a few seconds prior to that, when you asked the groom if it was all right did he do anything at that time toward inspecting the gear?

A. I don't remember after I asked him. I don't remember.

Q. After you asked him do you remember whether he did anything at all?

A. No."

In addition to the evidence shown above, there is expert testimony indicating that the saddle turned and slipped because "the girth of the saddle was not tight enough." And it should be noted at this point that there is no evidence to indicate that the tackle ("tack") used on the horse was in anything other than perfect condition.

At the outset of this discussion, it must be recognized that we are not here deciding a case in which injury is claimed because of some trait, condition or propensity of the horse. The law governing such circumstances is definitely declared in this state in **Troop A. Riding Academy v. Miller, 127 Oh St 545.** It is there stated:

"1 One who rides a horse, which he has hired for that purpose, takes the ordinary risks incident to such pursuit.

"2. In order to recover for injuries received when a horse hired for riding runs and falls, one who sues in tort must show knowledge, on the part of the owner or his agents, of some trait, condition or propensity from which a probability of the horse's running away or falling might reasonably be inferred.

"3. When there is no evidence of any known trait, condition or propensity of the horse, which would subject the rider to greater risks than ordinarily attach to horseback riding, it is error for the trial judge to submit such case to the jury. Defendant's motion for an instructed verdict should be granted."

Our question is whether there was or was not sufficient evidence of the alleged negligent saddling of the animal which proximately resulted in the injury.

There is nothing in the record to indicate that this accident was due to any voluntary action or contribution of the plaintiff. She did not improperly ride the horse; the saddle and girth was not interfered with nor handled by anyone after leaving the hands of the defendant's servant, and the plaintiff's explanation of her fall was that the saddle suddenly slipped and took her with it.

The defendant maintains that the accident was due to causes for which the defendant was not responsible; that the horse, by its own conduct, was the causative factor of the slipping of the saddle; "that a horse will frequently suck in air when the cinch is being tightened around him and that a few minutes later he may exhaust some of that air and the cinch may not be as tight around him as it was when the saddle was first put on. This in itself could cause the saddle to become slightly looser but does not prove in any way that the saddle was loose at the time that plaintiff mounted."

Operators of riding academies, holding themselves out to the public as having horses properly equipped for pleasure riding, must, in the exercise of due care, take into consideration the many and various propensities of horses, before, at the time of, and following saddling. In the ordinary course of things, a saddle does not slip to the belly of a horse if proper care has been used in cinching. And the slipping of a saddle is indeed reasonably foreseeable to any hostler if a girth is not properly tightened. In fact, the very purpose of a girth is to keep the saddle in proper place on the withers

and back of the animal, and this is accomplished by tightening it sufficiently to keep it from slipping.

As we view the evidence before us and the reasonable inferences to be drawn therefrom, we believe it sufficient to establish the claims of negligence. We think it sufficient to establish the fact that the horse was not cinched, at the time he was turned over to the plaintiff, in the manner that proper skill and reasonable care demanded, and that reasonable inspection was not made of the equipment.

2. It is further claimed that the court erred "in failing to charge the jury that a person incurs or assumes usual and ordinary risks and dangers usually present in the mode of conveyance which he selects."

As heretofore stated, "One who rides a horse, which he has hired for that purpose, takes the ordinary risks incident to such pursuit." This rule of law, however, does not mean that one who rides a hired horse assumes the risk of an improper saddling of the animal of which he had no knowledge. The slipping of the saddle due to improper adjustment was not one of the assumed risks of the adventure. Authorities on this question are so numerous that citations seem unnecessary.

We find no error in not charging the jury further on this point.

There are in all twelve separate claimed errors. Examination has been made of them all, and we find none prejudicial in character. Under this view of the record, the judgment will be affirmed.

Judgment affirmed; exceptions. Order, see journal.

GUERNSEY, PJ, and MIDDLETON, J, concur.