## ALEXANDER v. CHEEK.
### No. 2881.

Court of Civil Appeals of Texas. Eastland.
June 15, 1951.

Rehearing Denied Sept. 7, 1951.

McMahon, Springer, Smart & Walter, Abilene, for appellant.

Bryan Bradbury, Abilene, for appellee.

LONG, Justice.

Roy Cheek instituted this suit against L. P. Alexander for personal injuries sustained by him on March 31, 1950. C. E. Cheek, father of Roy Cheek, on said date, was engaged in operating a lumber yard in the City of Abilene. L. P. Alexander was engaged as a trucking contractor in said city. On this date Alexander rented to the lumber company a winch truck with a driver for the purpose of unloading from another truck a load of bundled lumber and re-stacking same in the lumber yard. For this service Cheek Lumber Company paid Alexander the sum of $10. Roy Cheek

and his brother-in-law, Audie Jones, both employees of the lumber company, were supervising and assisting in such undertaking. Robert B. Fonville was the driver of the truck belonging to Alexander. While using the truck and winch in unloading said lumber, a bundle of lumber weighing approximately 3,000 pounds suddenly fell upon Roy Cheek as the result of which he sustained personal injuries. Plaintiff sought to recover upon the doctrine of res ipsa loquitur. The court submitted the case to the jury upon this theory. The jury found (1) that the equipment was under the exclusive control of Fonville; (2) that Fonville was acting in the scope of his employment by Alexander in operating the equipment; (3) that the winch and equipment were not in proper working condition; (4) that while defendant's employee was operating the winch and equipment the cable on the spool suddenly unwound, causing the lumber to drop suddenly and unexpectedly; (5) that the fact that the winch and equipment were not in proper working condition was the cause of the sudden unwinding of the spool; (6) that if the winch and equipment had been in proper working order the sudden unwinding of the spool and dropping of the lumber would not have occurred; (7) that in the operation of such a winch and equipment, if in proper working condition, a sudden unwinding of the cable on the spool would not have occurred; (8) that it was negligence on the part of defendant to permit the use of the winch and equipment when same was not in proper working condition; (9) that such negligence was the proximate cause of the accident; (10) that the accident could not have been caused by any act of any person other than that of defendant, inquired about in special issue No. 8.

The court also submitted a proper issue and instruction on damages. Based upon the verdict the court entered judgment for plaintiff against defendant for $10,696. Defendant has appealed.

Appellant predicates his appeal upon 19 points. We deem it unnecessary to discuss any of the points raised except points Nos. 1, 2, 11 and 12. By points 1, 2 and 3, appellant contends the court should have granted his motion for an instructed verdict and, failing so to do, should have granted his motion for judgment non obstante veredicto. Points 11 and 12 complain of the action of the court in submitting to the jury, over his objections, special issues 8 and 9.

As has been heretofore stated, appellee relied upon the doctrine of res ipsa loquitur and the court submitted the case to the jury upon that theory. Appellant strongly contends that this doctrine does not apply to the facts in this case. We deem it unnecessary to pass specifically upon this question. Assuming, without deciding, that res ipsa loquitur is applicable to the case presented, we are of the opinion that the evidence is insufficient to carry the case to the jury on the question of negligence. After all, the doctrine of res ipsa loquitur is a rule of evidence. It is a type of circumstantial evidence admissible to prove negligence. Assuming that all the elements necessary to make a case under this doctrine are present, still we believe the evidence falls short of showing liability of defendant.

It will be noted that appellee based his case entirely upon the negligence of appellant in furnishing equipment that was not in proper working condition. His case is not based upon any negligence of the driver of the truck. If the evidence is sufficient, applying the rule of res ipsa loquitur, to sustain a finding that the equipment was not in proper working order, still the evidence is insufficient to show that defendant knew or, in the exercise of ordinary care, should have known of such defective condition, at the time he furnished the truck to the lumber yard for unloading the lumber. It is well settled that there is no liability on the part of a lessor of equipment which subsequently proves defective, unless it be shown that such equipment was defective and that its condition was known by the owner or could have been known by the exercise of ordinary care. Sturtevant v. Pagel, 134 Tex. 46, 130 S.W.2d 1017; Bender Motor Co. v. Rowan, Tex.Civ.App., 33 S.W.2d 263; Russell Const. Co. v. Ponder, 143 Tex. 412,

186 S.W.2d 233; Tex.Jur.1937 to 1947 Supplement, page 232. The evidence discloses that Cheek Lumber Company was shipping lumber from New Mexico by truck to their yard in Abilene. That when a truck load of lumber would arrive at the yard, the lumber company would communicate with Alexander or some other trucking contractor and secure a truck for the purpose of unloading the lumber. On the occasion in question, a load of lumber arrived at the yard and the truck and equipment involved in this accident were used in unloading this lumber. The equipment worked properly and no mishap occurred. Thereafter, the same morning, another truck load of lumber arrived. Alexander was contacted and asked to send a truck to unload the lumber. He complied with the request and the same truck that was used earlier in the day was sent back to the lumber yard, being driven by Fonville. The lumber on the truck was in bales. Roy Cheek, appellee, and Audie Jones, would place a chain around the bale of lumber and attach the chain to the hoist and signal the driver who in turn would put the machinery in motion and raise the bale of lumber off the other truck and then, under the direction of Cheek and Jones, would back his truck to the spot designated by them at which place the cable or hoist would be lowered and the lumber placed in position. Two bundles of lumber had been unloaded without mishap. As the third bundle was being unloaded, it suddenly dropped and struck Cheek and injured him. After the lumber fell on Cheek the driver of the truck put the machinery in motion and raised the bundle of lumber off him and left it suspended in the air for approximately one hour thereafter. After Cheek was taken to the hospital the same truck and equipment were used to finish unloading the lumber. This was done without mishap and it is undisputed that the equipment worked properly. The evidence is undisputed that the equipment worked properly down to the very time the bundle of lumber fell on appellee. It is further undisputed that without any repairs or change being made thereto, the equipment worked properly thereafter down to the date of the trial. There is no pleading or evidence to show in what particular the equipment was defective. From this record we have concluded that we cannot sustain the judgment of the trial court because we believe the evidence is not sufficient to show that appellant knew, or should have known, in the exercise of ordinary care, that the equipment was defective at the time he furnished it for the use of Cheek Lumber Company.

Appellee relies upon the case of Roberts v. Texas & Pacific Ry. Co., 142 Tex. 550, 180 S.W.2d 330. We believe this case is distinguishable from our case upon the facts. In the Roberts case the defective equipment was a refrigerator car on which the inside ventilator plug had been improperly placed on top of the outside cover. It will thus be seen that this defect was open and obvious upon a reasonable inspection by the company. In the case under consideration, there is no proof as to the nature of the defect in the equipment. The defect, if any, was not shown to be such as should have been discovered by the appellant in the exercise of ordinary care. We believe the following cases support our conclusion. Texas & P. Ry. Co. v. Endsley, 103 Tex. 434, 129 S.W. 342; Houston, E. & W. T. Ry. Co. v. Hickman, Tex.Civ.App., 207 S.W. 550.

■■ There is another reason why we cannot sustain the judgment. Where the evidence shows that the accident may have happened as the result of one of two or more causes and it is not more reasonably probable that it was due to the negligence of the defendant, than to another cause, the rule of res ipsa loquitur does not apply. Davis, Agent v. Castile, Tex.Com.App., 257 S.W. 870. As heretofore stated, appellee relied solely upon the negligence of appellant in permitting the use of equipment that was defective. He does not rely upon the negligence of the driver of the truck. We have concluded from the evidence that it is just as reasonable to believe that the accident could have been caused by the negligence, or some action, of the driver

of the truck as it is to presume that it was caused by some defect in the equipment. In other words, it is just as reasonable to infer that the accident was caused by improper operation of the equipment as a defect in the equipment. Appellee relied upon his own testimony to show that the sudden falling of the bale of lumber was caused by the equipment not working properly. He testified that immediately after the bale of lumber fell on him that Fonville, the driver of the truck, came to where he was and said that the winch had "dogged out." He further testified that Fonville said about the same time "he dogged out." From appellee's testimony, we quote as follows:

"Q. Are you acquainted with the mechanism that goes into a winch? A. Yes, sir.

"Q. Are you acquainted with all the various parts that make up a winch? A. Yes, sir.

"Q. And how they work? A. Yes, sir.

"Q. Are you especially acquainted with the spool and axle and the prongs they call dogs slipping in and out of that spool? A. Yes, sir.

"Q. Do you know the purpose of those dogs? A. Yes, sir.

"Q. Do you know what purpose they are to play in the operation of that winch? A. Yes, sir.

"Q. And from your experience and acquaintance with the winch, do you think you are in a position to express an opinion as to when one operates properly or improperly? A. Yes, sir, I think so.

"Q. Based on that, in your opinion, do you believe that a winch would permit the dogs to slip out from the spool and the spool to immediately unwind and let the lumber at the end of the chain or cable drop when that winch is operating in a proper manner?

* * * * * *

"Q. Roy, I would like for you to explain to the jury . . . explain this spool and the dogs, just where . . . what position the dogs are in when the spool is unwinding and permitting a weight to be lowered? A. They are on the . . . the dogs are on the inside of the spool.

"Q. Are they connected or touching anything inside that spool? A. Yes, sir, they are touching some other kinds on the inside of that spool, like that.

"Q. What is the purpose of those dogs being on the inside of that spool? A. Well, to keep it from unwinding too fast.

"Q. It forms a brace in there? A. Yes, sir.

"Q. What happens when those dogs come out of the spool, slip out, and leave the spool free? A. It will suddenly unwind, if it has any lumber on it.

"Q. And the lumber will immediately fall until it hits a base somewhere? A. Yes, sir.

"Q. In other words, a spool . . . is it your testimony that these dogs form a brace in there, that lets the spool unwind? A. Yes, sir.

"Q. What causes the spool to unwind? The speed, I mean. What governs the speed? A. The motor.

"Q. I would like for you to give an opinion. In your opinion, will that spool . . . if that winch, spool and dogs are in proper working order, will it suddenly unwind and let the lumber drop, if that winch is in proper working order? A. No, sir."

Then upon cross examination, appellee testified as follows:

"Q. You never saw dogs released . . . if you call them dogs, or ever see a load fall from an a-frame truck, did you? A. No, sir.

"Q. You don't know what causes them to fall, do you? A. That's the only thing that could cause one to fall, unless a cable is broken.

"Q. What? A. That's the only thing that could cause one to fall, unless a cable is broken.

"Q. How do you know that? A. Well, it has got its automatic brake, and everything in working order, it won't fall."

"Q. It has also got a manual brake? A. Yes, sir.

"Q. Well, if a man accidently hit it with his knee, or reached over and released it with his hands, it suddenly falls? A. No, sir.

"Q. What happens? A. If the dogs are engaged, it won't gain no, no speed.

"Q. But, if you disengage it, it will release? A. Yes, sir.

"Q. And it will fall just exactly like you say. A. Yes, sir.

"Q. So, that is not the only reason that causes them to fall, is it? A. That's the only one that I ever saw fall.

"Q. But, you do know all about a-frames, and you do know that it has got a manual . . . or lever that you work with your hand, push it to one side, and it releases it? A. Yes, sir.

"Q. If you hit that with your knee, it will release it; or that will cause that to become disengaged, it will be released? A. It will be released if your winch is in motion at that time.

"Q. If you monkey with that manual lever in that truck, it will release it, won't it? A. It would have to release it, if your winch was turning.

"Q. You can drop a load without using those dogs or having the brake out, you can brake it with your lever in your car, can't you? A. No, sir.

"Q. You mean to tell this jury there is no way a man could drop that load but . . . A. Not a heavy load. If it is a light load, it can be, but heavy, you can't.

"Q. What is the difference in that? A. It is the difference in the size of your brake.

"Q. There is a manual or a gear there in that car to be used to disengage that brake, isn't there, or those dogs? A. Yes, sir.

"Q. And if you apply force to it like it is meant to, it will let that drop, regardless of the load . . . it might take more force but it will drop? A. Yes, sir, it will drop at a high rate of speed.

"Q. There are ways besides dogs coming loose in that thing you speak of to let that drop. That's right, isn't it? A. Yes, sir.

"Q. You were mistaken when you said that was the only thing that could cause it to drop, weren't you? A. There is no one that would use a hand brake on handling a heavy load. The only thing they use the hand brake to . . .

"Q. Maybe it was an accident, or regardless of that, it can drop in other ways, or caused to be dropped in other ways? A. Yes, sir, in that way."

\* \* \* \* \* \*

Then upon direct examination, he further testified:

"Q. I would like for you, Roy, to state whether or not, in your opinion, that the winch when operated properly, will all of a sudden, turn loose and drop a heavy load? A. No, sir, it won't."

From an examination of the above evidence it is apparent that it is just as probable that the "dogs" on the winch were disengaged by the driver of the truck as it is to presume that the "dogs" became disengaged by reason of some defect in the equipment. We have carefully studied the evidence in this case and have concluded that it is insufficient to support a finding of negligence on the part of the appellant. Davis v. Castile, supra; Lewis v. Texas & N. O. Ry. Co., Tex.Civ.App., 199 S.W.2d 185; Texas & N. O. Ry. Co. v. Blake, Tex.Civ. App., 175 S.W.2d 683 (Err.Ref.); Bonner v. Thompson, Tex.Civ.App., 205 S.W.2d 610.

Having concluded that the evidence is insufficient to support the jury's finding of negligence we are without authority to render judgment for appellant. The only order we have power to enter is to remand the cause to the trial court for a new trial. Childre v. Casstevens, 148 Tex. 297, 224 S.W.2d 461; Miller v. Fleming, Tex.Sup., 233 S.W.2d 571.

The judgment of the trial court is reversed and the cause remanded.