P. R. LACKEY, Appellant,

v.

Leslie B. PERRY, Appellee.

No. 14061.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 27, 1963.

Rehearing Denied March 27, 1963.

Alfred M. Scott, Austin (on appeal only), W. W. Palmer, San Antonio, for appellant.

Richard Harris, Stahl & Sohn, San Antonio, for appellee.

BARROW, Justice.

P. R. Lackey, hereinafter referred to as defendant, appeals from a judgment entered on a jury verdict in a tort suit for damages brought by Leslie B. Perry, individually and as next friend of his minor daughter, Leslie M. Perry. Perry is hereinafter referred to as plaintiff. On April 3, 1960, Leslie M. Perry, then seventeen years of age, was injured in a fall from a horse which had been rented from defendant's public riding stable. There is considerable confusion in the record as to which horse she was riding at the time of the accident. This confusion is immaterial, however, since it is undisputed that she was riding a horse which had been rented from defendant's stable, and it is further undisputed that she was riding a different horse than the one rented to her by defendant's employees. We are not deciding a case in which injury is claimed because of some trait, condition or propensity of the horse. Rather, liability is pred-

icated upon the negligence of an employee of defendant's stable in improperly saddling the horse, which caused the saddle to slip.

Defendant was the operator of a livery stable which rented horses to the general public at an hourly rate. On April 3, 1960, Leslie M. Perry and her boy friend, James Boutot, rented two horses from defendant's stable and paid an hour's rent. After an hour's ride on a public bridal path, they returned these horses, and, upon request and payment of another hour's rent, were given two fresh mounts. Miss Perry testified that the second horse rented was saddled with an English type saddle rather than a western stock saddle, which she preferred and requested. Miss Perry and Boutot were joined, during the second hour, by another rider, James L. Jackson, whose mount was saddled with a western stock saddle. After they left the stable, and unknown to defendant or any of his employees, Jackson and Miss Perry traded mounts so that she could use the western saddle. Shortly after being helped on Jackson's horse, the saddle started slipping and the horse bolted. Miss Perry was unable to maintain her balance when the saddle turned under her. She was dragged along the ground by the running horse and sustained the injuries sued on herein. All of the horses rented by the stable were saddled by defendant's employees and all employees testified that it was dangerous to the rider when the saddle was improperly secured. Jackson testified that he had difficulty with the saddle slipping before exchanging horses, and that he had taken the horse back to the stable, and was assured by one of defendant's employees that the saddle was properly mounted. Jackson and Miss Perry both testified that the saddle slipped and turned under before she fell from the horse.

Defendant admitted that he knew riders frequently traded horses after they were out on the trail and that his employees were instructed to issue instructions prohibiting the trading of horses, as the stable employees tried to match the particular rider's ability with the traits of a horse. Miss Perry denied that she received instructions not to exchange horses with other riders.

The jury found: (1) the saddle on the last horse ridden by Miss Perry slipped; (2) such slipping was the result of the manner in which the horse was saddled; (3) the horse was negligently saddled; (4) such negligence was a proximate cause of the injuries received by Miss Perry; (5) she received no instruction not to exchange horses with anyone; (8) Jackson discovered the saddle on his horse was loose prior to the time he exchanged horses with Miss Perry; (9) after such discovery, Jackson did not fail to report such loose condition to one of defendant's employees. Issues Nos. 6, 7, 10, 11 and 12 were defensive issues, which were conditionally submitted and not answered, under the instructions of the court. Issues 13 and 14 related to damages.

■ Defendant's first five points are too general to comply with the briefing rules required by Rule 418, Texas Rules of Civil Procedure. Points which complain of the trial court's action in overruling defendant's motion for instructed verdict, motion for judgment notwithstanding the verdict, and motion for new trial are insufficient to direct the attention of the Court to the error relied upon. Missouri-Kansas-Texas R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931; Tindall v. Tacconelly, Tex.Civ.App., 328 S.W. 909, writ ref., n. r. e. We are required, however, to look to the statement and argument under these points in order to test their sufficiency. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478. It is seen, from the statement and argument under these points, that defendant asserts that Miss Perry was a trespasser on the horse she obtained in the exchange with Jackson, and therefore defendant owed no duty to her other than not to injure her intentionally. Although the rule in this State is that a bailor for hire is not an insurer of the fitness of the subject of the bailment, he is liable for personal injuries to, or the death of, the bailee or third persons proximately resulting from the danger-

ous or defective condition of the chattel while it is being used for the purpose known by the bailor to be intended, where the bailor has not used reasonable care to see that the chattel, as of the time of its letting, was free from any defects or weakness rendering it unfit for its known use, unless the defect was known or was obvious to the person injured or killed so that the person could have avoided injury. Sturtevant v. Pagel, 134 Tex. 46, 130 S.W.2d 1017; Continental Bus System, Inc. v. Toombs, Tex. Civ.App., 325 S.W.2d 153, writ ref. n. r. e.; Nesmith v. Magnolia Petroleum Co., Tex. Civ.App., 82 S.W.2d 721, no writ history; Vol. 2, Restatement of the Law of Torts, § 388; 8 Tex.Jur.2d, Bailment, § 19; 131 A.L.R. 845. The evidence is undisputed that defendant's employees knew it was dangerous to the rider if the horse was improperly saddled, and the evidence supports the jury finding that, although defendant had notice that riders occasionally traded horses, Miss Perry was not instructed not to exchange. There is no contention that the traits or propensities of the horse caused the injuries. Under all these facts and findings, defendant is responsible to plaintiff for the negligence of his employees in improperly saddling the horse Miss Perry was riding.

■ Defendant asserts that, in any event, Miss Perry assumed any risk in exchanging horses and is prohibited from recovery under the maxim, volenti non fit injuria. We do not believe she assumed the risk that the horse was not properly saddled. We have been unable to find a Texas authority on this proposition, but the case of Liossis v. Cavalry Riding Academy, 86 Ohio App. 334, 87 N.E.2d 266, is directly in point. In that case the Ohio Court of Appeals held that the rider of a hired horse does not assume the risk of an improper saddling of the animal, of which the rider has no knowledge. The Texas rule concerning voluntary exposure to risk requires a voluntary exposure to a danger which the plaintiff either does or should fully realize and appreciate. Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449; McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391. The facts in our case do not establish, as a matter of law, such a voluntary exposure to the danger of a horse being improperly saddled.

■ We have considered all the evidence and find that the answers of the jury on the negligence and contributory negligence issues are not so against the great weight and preponderance of the evidence as to be manifestly unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

■ Defendant asserts that the verdict of the jury on the damage issue is so excessive and exorbitant as to have been obviously induced by prejudice or some other improper emotion. The jury found that the sum of $15,000.00 would reasonably compensate Miss Perry for her physical pain and mental suffering, including embarrassment for her disfigurement, up to the time of trial and in the future. The jury was also permitted to consider impaired earning capacity. This issue and the instructions under it were submitted without objection. Miss Perry testified that when she fell her left foot caught in the stirrup and she was dragged on the rocks for some distance and was badly skinned all over her body; the femur on her left leg was broken; she was confined in the hospital for eleven days, during which time an eighteen-inch pin was surgically inserted in her leg; she was confined to her home for an additional three months; she was required to use crutches and a cane up until Christmas of 1960; in 1961 she was again hospitalized for three days and the pin was surgically removed; she testified that she suffered very severe pain and that at the time of the trial, which was about two years from the time of the accident, she still suffered pain and was unable to use the leg for much physical activity without its swelling and hurting. She has been restricted in certain physical activities and sports she enjoyed prior to the accident. She has been employed as a secretary from Christmas, 1960, to the date

of trial. She has a permanent scar about fourteen inches long on her left thigh, which prevents her from modeling hosiery as she did before the accident. She was corroborated in all the foregoing by a medical doctor, who testified she had probably made maximum recovery and her present condition would be permanent.

■ The rule to be applied by this Court, as set forth by an unbroken line of decisions, has been stated in 17 Tex.Jur.2d, Damages, § 335, as follows:

"It is a well settled general rule that where the law furnishes no legal measure of damages, and they are unliquidated, the amount to be awarded rests largely in the discretion of the jury; and unless the award is so large as to indicate that it is the result of passion, prejudice or corruption, or that the evidence has been disregarded, their verdict is conclusive and will not be set aside as excessive, either by the trial court or on appeal."

There is nothing pointed out by defendant, other than the size of the verdict, to indicate any improper motives on the part of the jury in finding this sum. There is no question but that the jury awarded very substantial damages for the injuries sued on, but we have found nothing in the record to indicate that the jury was guided by any motive other than a conscientious consideration of the evidence and the instructions of the court. We overrule defendant's points concerning excessiveness of verdict.

■ Defendant complains of the refusal of the trial court to permit defendant to reopen his case and read a portion of plaintiff's original petition, wherein he complained that the horse was wild and that this caused the accident. The bill of exception shows that both parties had rested their case about noon on the day preceding arguments to the jury except for medical testimony, and that after the medical testimony was introduced, they both closed. This request to reopen came just as the court was ready to read the charge to the jury. The petition would have been cumulative of the matters previously developed on cross-examination of Miss Perry. The question of reopening the case and hearing additional testimony from either or both parties is left to the discretion of the trial court. Rule 270, T.R.C.P.; Lubbering v. Ellison, Tex. Civ.App., 342 S.W.2d 796, no writ history. This discretion should be liberally exercised in the interest of permitting both sides to fully develop the case in the interest of justice. We cannot say from this record that the refusal of the trial court constituted an abuse of discretion.

■ The trial court did not err in refusing to submit defendant's requested issue as to whether or not Miss Perry was negligent in riding the last horse without allowing the defendant's agents an opportunity to inspect the riding gear before she mounted the horse. This issue was not raised by proper pleadings, and, in any event, is a shade of his defensive issue No. 6, inquiring as to whether or not Miss Perry was negligent in exchanging horses. Defendant did not object to the conditional submission of his defensive issues and thus acquiesced in this manner of submitting same. He cannot now complain of this form of submission. Rule 272, T.R.C.P. Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985; Missouri Pacific R. Co. v. Randall, Tex.Civ.App., 347 S.W.2d 658, writ ref., n. r. e.

■ This suit was brought by Leslie B. Perry to recover medical expenses incurred by him in treatment of his minor daughter and also as her next friend to recover her damages. The judgment erroneously permitted all the recovery to be in his individual name. The judgment of the trial court is reformed so that Leslie B. Perry will recover the sum of $730.00, and Leslie M. Perry, a minor, will recover the sum of $15,000.00, to be paid into the registry of the court, as required by Art. 1994, Vernon's Ann.Civ.Stats. In all other respects the judgment is affirmed.