**Ray David BELLAMY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 74–H–1132.**

United States District Court, S. D. Texas, Houston Division.

April 12, 1978.

Richard B. Stilwell, Houston, Tex., for plaintiff.

Robert Darden, Asst. U. S. Atty., Houston, Tex., for defendant.

Otway B. Denny, Jr. of Fulbright & Jaworski, Houston, Tex., for intervenor.

## MEMORANDUM OPINION

NOEL, District Judge.

Plaintiff, Ray Bellamy, brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., to recover damages for personal injuries sustained on May 2, 1973, when plaintiff slipped and fell while entering a step van furnished by National Aeronautics and Space Administration (NASA) and maintained by the General Services Administration (GSA). This Court has jurisdiction under 28 U.S.C. § 1346. The case was tried to the Court sitting without a jury on the issue of liability, damages being reserved under Fed.R.Civ.P. 42(b). This Memorandum constitutes the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

Plaintiff was employed by Kentron of Hawaii, Ltd., and sustained his injuries while in the course and scope of his employment. Kentron was a support contractor for NASA at the Johnson Space Center in Houston, Texas. NASA furnished the step van to Kentron. It was used to carry workmen and their tools and materials to their various job sites at the Johnson Space Center. The contract between NASA and Kentron provided that GSA would furnish the necessary repairs and maintenance on this step van.

This case is somewhat different from the typical slip and fall case in that plaintiff does not assert that the fall resulted from his slipping on any foreign substance. Rather, he asserts that the step upon which he entered the van had become smooth and slippery through continued use of the step. Plaintiff alleges that the United States was negligent in allowing this step to become slick and in failing to remedy the slick condition. He therefore asserts that the United States, through GSA, failed to use ordinary care in maintaining this van.

At the time of the accident, plaintiff was the driver of the van. He had been driving it for approximately twenty days before the accident. The vehicle is a commercial van with a large sliding door on the passenger's side. The driver of the vehicle, as well as any passengers generally enter on the passenger's side. From the ground to the first step it is approximately seventeen inches; from this first step there is an additional step up of approximately ten to twelve inches to the floor level of the van. The first step is inside the van and with the door closed, the step is not exposed to the exterior. It was on this first step that plaintiff's foot slipped.

The step is made of flat sheet steel with no perforations or grooves of any kind on it. When the van was new, the step was painted, but at the time of the accident the paint had worn off the center portion of the step. It has not been repainted. At the time of plaintiff's fall, the step had been worn down to bare metal, had a shiny, polished appearance, and was slippery. Plaintiff had slipped on this step before May 2, 1973; however, he had never fallen before this

date. Plaintiff had also observed others slip on this step. He was therefore aware of its slippery condition.

This van was taken to the GSA garage for routine maintenance every three months. While at the garage, the procedure was for the maintenance men to completely inspect the van for safety, and to perform any necessary repairs or maintenance. There was testimony that on more than one occasion, the slippery condition of the step was reported to either the GSA vehicle dispatcher or someone at the GSA garage. While defendant contradicted such testimony, plaintiff's testimony was credible. The Court therefore finds that GSA was informed of the slippery condition of the step.

Under the Tort Claims Act, the substantive law of Texas controls. 28 U.S.C. § 2674. In Texas, a bailor is liable for defective equipment if it is shown that such equipment is dangerous for the use for which it is supplied and that its condition was known by the bailor or could have been known by the exercise of ordinary care. *Sturtevant v. Pagel*, 134 Tex. 46, 130 S.W.2d 1017 (1939); *Lackey v. Perry*, 366 S.W.2d 91 (Tex.Civ.App.1963) (no writ history); *Alexander v. Cheek*, 241 S.W.2d 950 (Tex.Civ.App.1951) (writ ref. n. r. e.); *Nesmith v. Magnolia Pet. Co.*, 82 S.W.2d 721 (Tex.Civ.App.1935) (no writ history).

The slippery condition of the first step which was used to enter the van made the van dangerous for the use for which it was supplied. The Court finds that the United States either knew of the dangerous condition of the step, or in the exercise of ordinary care should have known of it, but did not take any action to correct it. Further, the slippery condition of the step could have been remedied easily. A "hall roll" rubber mat could have been placed over the step. NASA had such "hall roll" mats and had furnished them to GSA for installation in other vehicles. Non-skid paper strips could also have been installed easily on the step. These paper strips are inexpensive and can be installed in a short period of time. One witness testified that the strips could have been installed in this van in only five minutes. Having knowledge of the dangerous, slick condition, the United States was negligent in failing to remedy the condition.

The distance from the ground to the step was approximately seventeen inches and therefore this was an unusual, high step. This step was particularly high for the plaintiff who was only five feet, eight inches tall. The Court observed Mr. Bellamy while he was stepping into the van, during the demonstration of how the fall occurred,[1] and noted his difficulty in making such a high step. For the plaintiff to make this step, it was necessary for him to grab the van with both hands and pull himself into the van. However, the van had no handles or grab rails on it to assist a person in entering the van. Plaintiff testified that he grabbed the door handle with his left hand and the door frame with his right to pull himself into the van. From a visual inspection of the van, it is apparent that neither the door handle nor the door frame are ideal, or even satisfactory, handholds. The door handle may turn or the door itself may slide. The door frame on the right side is thick and it is difficult to grasp. Thus, the high step together with the lack of anything suitable to grab onto made the slick surface of the step all the more hazardous. The Court concludes, therefore, that the negligence of the United States in failing to properly maintain the van was the proximate cause of plaintiff's fall and his injuries.

The United States contends that the plaintiff was contributorily negligent and that his own negligence was the cause of the fall. Plaintiff testified that he knew that the step was slippery because his foot had slipped on it before, and that he had seen others slip on that step. Since plaintiff had knowledge of the dangerous condi-

---

1. Plaintiff's demonstration of how the fall took place was done at the request of the United States Attorney.

tion, he must have exercised a higher degree of care in order not to be contributorily negligent.

The plaintiff testified, and the Court finds, that when he was approaching the step, he was not hurrying or rushing. He grabbed onto the van with both hands to assist himself in getting into the van and placed his right foot in the center of the step. His foot then slipped causing him to fall onto his back. Not only was this testimony not contradicted, but, the manner in which he described his fall, twisting backward to his left, gives further credence to his statement that he grabbed on with both hands. His left hand was first twisted loose from the door handle and his right hand later slipped from the doorjamb. He landed on his left hand and on his tailbone, suffering injuries to his left wrist and back.

All of the testimony indicates, and the Court finds, that Mr. Bellamy was acting in a careful manner when he entered the van. The only indication that Mr. Bellamy may have been negligent was the mere fact that an accident occurred. From all of the circumstances, the Court concludes that the mere fact a fall occurred is not sufficient to show that plaintiff was negligent. The Court therefore finds that the plaintiff was not negligent[2] and the negligence of the United States was the sole proximate cause of plaintiff's injuries.

After the close of the evidence, the Court requested that the parties submit briefs discussing whether comparative negligence or contributory negligence would apply to this case. While this is no longer in issue because of the finding that the plaintiff was not negligent, the Court concludes that comparative negligence would apply in this case.

■ Texas adopted the doctrine of comparative negligence by statute. Art. 2212a, Vernon's Texas Civil Statutes Annotated. The comparative negligence statute became

effective on September 1, 1973 and provided in part that "[t]his Act does not apply to any cause of action arising before its effective date." Sec. 4, Texas Acts 1973, 63rd Leg., ch. 28. Therefore, whether comparative or contributory negligence applies to a case is determined by the date when the cause of action arose. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 753 at n. 1 (Tex.1975) (dicta). Plaintiff's injury occurred on May 2, 1973, and defendant argues that the cause of action arose on this date. Plaintiff argues that the cause of action did not arise until March 1, 1974, when his administrative claim was denied.

■ Under Texas law, a cause of action arises only when facts exist which authorize the claimant to seek relief in a court of competent jurisdiction. *A. H. Belo Corp. v. Blanton*, 133 Tex. 391, 129 S.W.2d 619 (1939); *Murphy v. Honeycutt*, 199 S.W.2d 298 (Tex.Civ.App.1946) (writ refused). Under federal law, a cause of action also does not arise until the plaintiff can first successfully maintain suit on that cause of action. *Bell v. Aerodex, Inc.*, 473 F.2d 869 (5th Cir. 1973); *United States v. One 1961 Red Chevrolet*, 457 F.2d 1353 (5th Cir. 1972); *United States v. First National Bank*, 441 F.2d 906 (5th Cir. 1971). Therefore, the question becomes, when could Mr. Bellamy first file suit against the United States?

■ The Federal Tort Claims Act provides in part:

> An action shall not be instituted upon a claim against the United States for money damages for . . . personal injury . . . unless the Claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . .

28 U.S.C. § 2675. The filing of an administrative claim is jurisdictional and is an absolute prerequisite to the filing of an action.

---

**2.** At the conclusion of the evidence, oral findings were made. These oral findings were tentative and the Court stated that they would be superseded by written findings and conclusions. One of the oral findings was that the plaintiff had been negligent. After carefully reviewing the Court's notes of the testimony and all of the evidence in the case, the Court specifically overrules this finding and finds that the plaintiff was not negligent.

*Molinar v. United States*, 515 F.2d 246 (5th Cir. 1975); *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508 (6th Cir. 1974); *Melo v. United States*, 505 F.2d 1026 (8th Cir. 1974); *Best Bearings v. United States*, 463 F.2d 1177 (7th Cir. 1972). Plaintiff could file an administrative claim after May 2, 1973 but he could not file suit until after his administrative claim was denied. Therefore, the cause of action did not arise until March 1, 1974.

This interpretation is also supported by the statutory language in 28 U.S.C. § 2675, supra, and in the applicable statute of limitations, 28 U.S.C. § 2401. Both statutes draw a distinction between a "claim" and an "action." When a person suffers a personal injury for which the United States may be liable under the Tort Claims Act, the claimant must file an administrative claim with the appropriate federal agency within two years after the "claim" accrues. However, until the agency denies the "claim," the claimant may not file an action. If the "claim" is denied, then the claimant must file an "action" within six months of the denial. 28 U.S.C. § 2401. Thus, there is a clear distinction in the applicable statutes between a "claim" and a cause of "action." There is a two-year limitation period for a claim and a six-month period for an action. A cause of action under the Federal Tort Claims Act does not arise until the administrative claim is denied.[3] Since Mr. Bellamy's claim was denied on March 1, 1974, his cause of action arose on that date. Therefore, comparative rather than contributory negligence would apply in this case.[4]

This Memorandum supersedes the Court's remarks and tentative findings announced from the bench.

The Clerk shall file this Memorandum and send copies to counsel.

**3.** The Court has considered *Beech v. United States*, 345 F.2d 872 (5th Cir. 1965) and *Mendiola v. United States*, 401 F.2d 695 (5th Cir. 1968) and finds that they do not apply to this case. Both cases held that a cause of action for personal injury under the Tort Claims Act accrues at the time of injury if damages are discernible at the time of injury. These cases interpreted 28 U.S.C. § 2401 before it was amended. The amendment drew the distinction between claim and action which was not present in the earlier statute.

**4.** After careful research, no cases have been found which have considered this question. Since this is a question of first impression, this discussion is included even though it is no longer in issue.