OPINION OF THE COURT
Frederic E. Hammer, J.
Plaintiff, Jacqueline Douglas, brings this action to recover damages allegedly sustained as a result of injuries caused by a fall from a horse which she had hired from defendant, Dixie Dew Riding Academy. Plaintiff contends that on October 7, 1973, at 3:30 p.m., a horse which had been assigned to her was taken from the stable fully saddled, along with another horse upon which plaintiff’s daughter was to ride. Plaintiff testified that she mounted the horse from the left, standing on a block, placing her left foot in the stirrup and her right leg astride the saddle. She found the saddle comfortable, and there was no movement or slipping of the saddle upon mounting. The stirrups were then adjusted to length. Plaintiff and her daughter departed the corral, walking the horses to the bridle path. *205 After a short walk, they arrived at the bridle path, and subsequently joined another group of riders. Shortly thereafter, plaintiff’s daughter suggested they leave the group and proceed ahead. They prompted their horses to trot, then to canter, and finally went into a full gallop.
Plaintiff testified that while galloping, the saddle upon which she was seated began to slip. She dug her feet into the stirrups for greater control, but went over, hitting the ground and sustaining the injuries alleged. The daughter testified that immediately prior to the accident, plaintiff’s horse was behind her, but in galloping overcame and proceeded ahead.
Defendant, through one of its employees, testified that as standard procedure, the riding academy employees always check the girth of the saddle at least three times, once when the horse is first saddled, a second time when the horse has had an opportunity to walk, and a third time after the rider has mounted, and that this procedure was followed on the occasion in question. Defendant further testified that there was a sign in place at the entrance to the bridle path stating that no galloping was permitted.
Plaintiff submits two contentions in her memorandum of law. First, that defendant was negligent in the improper manner of saddling the horse, in failing to sufficiently tighten the girth, thus causing the saddle to slip during the ride. Second, that there was an implied warranty of fitness for the intended purpose and use, and defendant breached that implied warranty.
In view of the paucity in the New York courts of similar decisions, this court is compelled to seek comparable determinations in sister States for assistance in the resolution of this matter.
In Ogan v Perkins (191 SW2d 666 [Mo]) the plaintiff and three companions hired horses from defendant riding academy to go riding at a bridle path. Plaintiff’s horse got out of control and ran away, causing the saddle to turn. He was thrown, receiving injuries. Plaintiff contended that defendant negligently failed to tighten the saddle girth before delivering the horse to plaintiff. The court stated (pp 666-667):
"Shortly after reaching the bridle path plaintiff stopped his horse to light a cigarette, but dropped it after riding a short distance. He sought another cigarette, but discovered that he did not have the package. He looked back and saw the package of cigarettes on the ground. He testified: T turned *206 around (to get the package) and as soon as I got the horse turned around he started running and I couldn’t stop him. He made a short turn off the path, and when he did that the saddle started to slip; it started to turn sideways (to the left) on the horse. I was ready to slip off and I grabbed hold of his mane in order to hold on.’ * * *
"It will be noted that plaintiff’s case is bottomed on the alleged negligence of defendant in failing to tighten the girth before delivering the horse to plaintiff and not on anything pertaining to the horse * * * It was defendant’s duty to exercise ordinary care to ascertain if the girth needed tightening in order to be reasonably safe, and to tighten if such was found to be necessary in order to make reasonably safe. [Citing cases.]”
In Liossis v Cavalry Riding Academy Co. (86 Ohio App 334) the court was confronted with a factual situation almost identical to the instant case. Plaintiff rented a horse and its equipment from defendant. A saddled horse was brought from the stable to plaintiff, who mounted the horse from a platform. The horse was then ridden at a walk four or five times around a ring, and then was directed onto a bridle path. After a short distance, the horse commenced to trot, at which time the saddle began to slip and turn to the left. The rider thereupon took her left foot out of the stirrup, preparing to throw herself off, when her right foot became caught in the right stirrup. Plaintiff fell from the horse’s back, and the saddle turned to a position beneath the animal’s belly with plaintiff’s right foot still engaged in the right stirrup. The horse became frightened and commenced to gallop, dragging the plaintiff about 100 feet. The court, in deciding for the plaintiff, stated (pp 338-339):
"Operators of riding academies * * * must, in the exercise of due care, take into consideration the many and various propensities of horses, before, at the time of, and following saddling. In the ordinary course of things, a saddle does not slip to the belly of a horse if proper care has been used in cinching. And the slipping of a saddle is indeed reasonably foreseeable to any hostler if a girth is not properly tightened. In fact, the very purpose of a girth is to keep the saddle in proper place on the withers and back of the animal, and this is accomplished by tightening it sufficiently to keep it from slipping.
*207 " 'One who rides a horse, which he has hired for that purpose, takes the ordinary risks incident to such pursuit.’ This rule of law, however, does not mean that one who rides a hired horse assumes the risk of an improper saddling of the animal of which he had no knowledge.”
The court found that the horse was not cinched properly in the manner demanded by skill and reasonable care, and that a reasonable inspection was not made of the equipment. However, in Liossis there was no testimony that the defendant’s employee, who saddled the horse, had tightened the girth on more than one occasion.
In the case before the court, defendant followed proper standard procedure by checking the girth on three separate occasions, and each time tightening it with proper care. It is significant that the saddle remained secure until plaintiff began to gallop the horse, which was prohibited on the bridle path. The court finds that the saddle was properly adjusted before the plaintiff was permitted to leave the premises of the defendant. A person cannot recover for injuries sustained while exposing himself to a danger which he either does or should fully realize and appreciate. (Lackey v Perry, 366 SW2d 91, 95 [Tex].)
Plaintiff has failed to present any credible evidence showing an improper saddling of the horse, or that the saddle or its components were defective.
Plaintiff’s contention of breach of implied warranty of fitness for purpose must also fall. This contention was first raised in plaintiff’s memorandum of law after the case had been heard. Plaintiff’s complaint states one cause of action for negligence, and is devoid of any cause of action for breach of implied warranty. Assuming, arguendo, that such a cause of action had been pleaded, it would nonetheless be necessary for plaintiff to prove that the saddle was unfit or improperly placed on the horse. Plaintiff has failed to show any defect in the saddle or that it was improperly affixed to the horse. (Friedman v Medtronic, Inc., 42 AD2d 185; Becton v Firestone Tire Co., 38 AD2d 693.)
Accordingly, the court finds that plaintiff has failed to sustain the burden of proof. The complaint is dismissed.