## KANAWHA & MICHIGAN RAILWAY COMPANY *v.* KERSE, ADMINISTRATOR OF BARRY.

ERROR TO THE CIRCUIT COURT OF KANAWHA COUNTY, STATE OF WEST VIRGINIA.

No. 129.   Argued December 10, 1915.—Decided January 10, 1916.

Where the highest appellate court of the State refuses to allow a writ of error to review a judgment based on a verdict, the writ of error from this court is directed to the trial court.

Under the Employers' Liability Act, the action lies for injury or death resulting in whole or in part from the negligence of the officers, agents or employés of such carrier.

To conduct switching operations upon a switch obstructed in such manner as to endanger the lives of brakemen upon its cars, is evidence of negligence on the part of the railroad company, and the existence of such an obstruction for a considerable period of time is presumptive evidence of notice to the company.

The burden of proof of assumption of risk is on the employer, and unless the evidence indisputably shows such assumption, the trial court does not err in refusing to take that question from the jury.

Knowledge of a fixed obstruction over a track in such position as not to clear. a man standing on top of a box car necessarily imports a risk to an experienced brakeman; and, in the absence of evidence of objection on his part or promise of reparation by the employer, assumption of the risk.

The fact that the court erroneously refused defendant's request for an instruction as to plaintiff's assumption of risk based on the hypothesis of the latter's knowledge of an existing condition is not ground for reversal where the jury by a specific finding negatived that hypothesis.

THE facts, which involve the validity of a verdict and judgment in an action for injuries under the Employers' Liability Act, are stated in the opinion.

*Mr. Leroy Allebach* and *Mr. W. N. King* for plaintiff in error:

The court erred in refusing to arrest the evidence from the jury and to direct a verdict in favor of defendant, at the close of plaintiff's evidence, and the court erred in refusing to direct a verdict for defendant, at the close of all the evidence. A Federal question is involved; the burden of proving negligence is on the plaintiff; assumption of risk is available as a defense; assumption of risk need not be affirmatively pleaded under West Virginia law; the accident was caused solely by employé's negligence.

·The court erred in refusing to give the instructions requested by the defendant below before argument to the jury. Defendant in error had actual knowledge of the presence of the obstacle over the track and knew of the dangers connected therewith. The finding of the jury is not supported by any evidence. The court could have avoided this error by directing a verdict, as requested.·

In support of these contentions, see *Farley v. N. Y., N. H. & H. R. R.,* 87 Connecticut, 328; *Hoylman v. Railway Co.,* 65 W. Va. 264, 270; *Melton v. Ches. & Ohio Ry.,* 64 W. Va. 168; *North Carolina R. R. v. Zachary,* 232 U. S.

248; *Oliver* v. *Ohio River R. R.*, 42 W. Va. 703; *Pankey* v. *A., T. & S. F. R. R.*, 180 Mo. App. 185; *Ridgeley* v. *West Grafton*, 46 W. Va. 445; *St. L., I. M. & S. Ry.* v. *McWhirter*, 229 U. S. 265; *Sanderson* v. *Panther Lumber Co.*, 50 W. Va. 42; *Seaboard Air Line* v. *Horton*, 233 U. S. 492, 502; *Southern Ry.* v. *Bennett*, 233 U. S. 80; *Williamson* v. *N. N. & M. V. Co.*, 34 W. Va. 657; *Woodell* v. *W. Va. Improvement Co.*, 38 W. Va. 23, 47; Hogg's Pleading and Forms, § 228, pp. 184–85.

*Mr. George A. Berry*, with whom *Mr. R. F. Downing* was on the brief, for defendant in error.

Mr. Justice Pitney delivered the opinion of the court.

This was an action under the Federal Employers' Liability Act to recover damages because of the death of one Barry, a brakeman in the Railway Company's yard at Charleston, West Virginia, on April 23, 1911. It was pleaded and was proved without dispute that he received injuries resulting in his death while employed in interstate commerce by the Railway Company, admittedly a common carrier. There was a verdict in favor of the administrator, and the Supreme Court of Appeals of West Virginia refused to allow a writ of error to review the resulting judgment; hence our writ was directed to the trial court.

The principal argument of plaintiff in error is addressed to the refusal of the court to direct a verdict in favor of defendant upon the ground that there was no proof of negligence on the part of the Railway Company, and that there was clear and undisputed proof that Barry assumed the risk of such an injury as that which resulted in his death.

It appears that Barry was an experienced yard brakeman, and was employed in that capacity by the Railway Company in its Charleston yard. Among the industries served by the yard was that of the Kanawha Brewing

Company, which had a private switch running through its premises and connecting with defendant's main line. Some time prior to April 23, 1911, carpenters in the employ of the Brewing Company had placed one or two pieces of timber, about 2 inches thick and 3 to 6 inches wide, in a horizontal position across the switch track and at a height between 3 feet and $4\frac{1}{2}$ feet above the top of an ordinary box car. The timber was secured by nails to two buildings on opposite sides of the track. There was a conflict of testimony as to the length of time that the timber had been in position prior to the accident, witnesses fixing it at periods varying from two or three days to a month. It was necessary for members of defendant's yard crew to pass in and out of the switch and under the obstruction frequently. The timber was in plain view, but because of a sharp curve in the switch-track could be seen by those upon the top of a car for only a short distance when approaching it. On the twenty-third of April a switching crew, of which Barry was that day a member, went upon the switch to haul out upon the main line a car destined for interstate commerce. The engine, in charge of one Leonard, was backed in upon the switch, and Barry coupled up the car, which was an ordinary box car, and then climbed to the top of it. Leonard started to pull out of the switch, and as the train proceeded Barry, who was standing near the rear end of the car, and not looking forward, but sidewise (presumably watching Wintz, the conductor, who was standing upon the ground in charge of the train), came in contact with the timber and was thrown to the ground, sustaining a fracture of the skull, from which he soon died.

The action of the Railway Company, through its employés, in conducting its switching operations upon a switch obstructed, as this one was, in such manner as to endanger the lives of brakemen upon its cars, speaks so clearly of negligence that no time need be spent upon it.

The evidence that the timber had been in the position described for a considerable period of time was presumptive evidence of notice to the company, besides which the switch engineer and conductor both testified to actual knowledge on their part, prior to the time of the accident to Barry. Under the Employers' Liability Act (35 Stat. 65, c. 149, § 1) the action lies for "injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

Upon the question of assumption of risk, the case for the Railway Company was stronger. One Forbes, a fellow brakeman, testified that Barry had worked on the same crew with witness during all the time he was employed by the Company, this being "something like a month;" that the obstruction across the Brewing Company's track had been there "pretty near the whole time Mr. Barry was working for the company—must have been there something like a month;" that "I told Mr. Barry to be careful and watch this piece of timber, myself, and I and Mr. Barry had passed under it ourselves, and we had to get down this way (witness stoops quite low) to get under the piece of timber on the box car, and I told him several times about watching;" and that he and Barry probably went in on the switch together two or three times a day, and he had often seen Barry go under the obstruction. And Wintz, the conductor, testified that Barry commenced work for the company "about the first of the month, and worked up until the 23rd;" also that "I notified him about the overhead pieces, to be careful and watch out for them." This testimony, as seen in print, certainly seems convincing, although Wintz, upon cross-examination, could not say but that he had told Mr. Kerse, the administrator, that he and Barry had "never had any conversation at all about this overhead obstruction."

But there was substantial contradiction of the testimony

of these witnesses. Leonard, the engineer of the yard locomotive, called as a witness for plaintiff, testified distinctly that the day on which Barry met his death was the first that the witness had seen him; that he did not know whether Barry was employed by the Railway Company or not. And one Greter, called by defendant, testified that it was to him Barry had applied for employment as yard brakeman, and he identified the written application signed by Barry; he also testified that Barry entered the service of the Company "about three or four days" after the application was approved. The application itself was introduced in evidence by defendant; it is dated March 31, 1911, and is indorsed "Approved, A. N. Lyon, Supt., 4/14/1911." The latter date, coupled with Greter's testimony, would seem to fix April 17th or 18th (five or six days before the accident) as the earliest date on which Barry was employed by the Railway Company. And this is so inconsistent with a material part of the testimony of Forbes and Wintz that the jury may reasonably have concluded that their testimony should be rejected *in toto*—*falsus in uno, falsus in omnibus*—and that in truth, as indicated by the testimony of Leonard, Barry had never worked upon the Brewing Company's switch previous to the time of the disaster. The burden of proof of the assumption of risk was upon defendant, and unless the evidence tending to show it was clear and from unimpeached witnesses, and free from contradiction, the trial court could not be charged with error in refusing to take the question from the jury.

Only one matter remains to be mentioned. The court refused to instruct the jury, as requested by defendant, "that if they find from the evidence that Thomas P. Barry knew of the presence of the piece of timber over the track of the Kanawha Brewing Company, and knew that it would not clear a man standing on the top of a box car, and with such knowledge continued in the service of

The Kanawha and Michigan Railway Company, where his duties required him to pass under said piece of timber, then said Thomas P. Barry must be held to have assumed the risk of being injured by being struck by said piece of timber and there can be no recovery by the plaintiff herein."

Since knowledge of a fixed obstruction over the track in such a position as not to clear a man standing upon the top of a box car would seem necessarily to import to an experienced brakeman that there was a risk of injury to him in that situation, and since there was no evidence of objection by Barry or promise of reparation by his employer to rebut the presumption that the risk was assumed, the refusal of this request appears plainly erroneous. But this does not result in a reversal of the judgment under review, because by specific findings of fact the jury negatived the hypothesis upon which alone the instruction was based. In response to particular interrogatories submitted by the court, they found that Barry did not know that the piece of timber was stretched over the track, and (of course) did not know that the timber was so low that it would not clear him when standing upon the top of the box car.

A judgment is not to be reversed for an error by which the plaintiff in error cannot have been prejudiced. And the refusal of an instruction as to the legal result that would follow only upon the hypothesis that the deceased knew of the presence of the timber, and knew it would not clear a man standing upon the top of a box car, became legally insignificant when the jury had in its findings distinctly negatived the facts that made up the hypothesis. Thus the progress of the trial rendered the error wholly immaterial to the merits. *Greenleaf's Lessee* v. *Birth,* 5 Pet. 132, 135; *Fidelity & Deposit Co.* v. *Courtney,* 186 U. S. 342, 351.

*Judgment affirmed.*