### SAFETY CAS. CO. v. MALVOUX.

No. 4466.

Court of Civil Appeals of Texas. Beaumont.

Sept. 25, 1947.

Rehearing Denied Oct. 15, 1947.

Lipscomb & Lipscomb, of Beaumont, for appellant.

Gilbert T. Adams, of Beaumont, for appellee.

COE, Chief Justice.

This is a suit for Workman's Compensation brought by appellee, Randolph Malvoux against Safety Casualty Company for recovery of compensation for alleged accidental injury suffered in the course of employment of Magnolia Petroleum Company, on January 29, 1946.

The case was submitted to the jury and upon return of the verdict, both parties filed motion for judgment. Appellant's motion for judgment was overruled and judgment was rendered for appellee. From that judgment, appellant has properly perfected its appeal to this court.

In answer to the special issues submitted by the court, the jury found: that Randolph Malvoux sustained an injury to his body by overheating; that such was sustained in the course of his employment; that same was an accident; that the plaintiff is suffering from paresis; that the overheating was a producing cause of the paresis; that plaintiff was engaged in the performance of duties which subjected him to a greater hazard from overheating than ordinarily applies to the general public; that the employer had notice within 30 days; that such injury resulted in total incapacity; that such total incapacity began February 2, 1946; that it was permanent; that the personal injuries sustained by Malvoux on January 29th were the producing cause of such incapacity; that plaintiff's incapacity was not caused

solely by syphilis and resulting paresis; that plaintiff's incapacity has not resulted from disease processes unrelated to his employment; that plaintiff did not contract a cold or influenza as the result of over exertion; that the cold and influenza did not bring about the paresis; that plaintiff's disability is not an occupational disease coupled with syphilitic condition; that plaintiff's disability is not due solely to syphilis and paresis existing prior to January 29th combined with or aggravated by a cold and influenza contracted after January 29th. The jury further found that the syphilis was not the sole cause of the paresis; that the paresis did not naturally result from syphilis; that the paresis did not exist prior to January 29, 1946; that the paresis was not the result of a gradual development; that the 16 hours of work performed by Malvoux was not the sole cause of the paresis.

Appellant's brief contains 13 points; the first 12 of which raise the points that there was no evidence and that the evidence was insufficient to justify the court in submitting the case to the jury and in overruling appellant's motion for an instructed verdict, and in overruling appellant's motion for judgment non obstante veredicto.

Appellee alleged in his petition that while in the process of dumping wax in the wax tank, other employees of said defendant turned on the steam for the purpose of treating said wax, and turned on said steam with such force and volume that said steam filled the quarters where plaintiff was and greatly heated up said room, said steam filled his nostrils, lungs and chest, overheating him and made him weak and debilitated and dizzy, causing him to walk unsteady and his mind to be affected, and to become weak, upsetting his nervous system, and in the alternative that he was suffering from a disease known as syphilis, and said weakening of his body allowed and caused and produced an activation of said syphilitic condition and lighted up said syphilitic condition, making same very active and producing in him what is known as paresis, and same naturally resulted from the damage or harm to the physical structure of plaintiff's body.

It is appellant's contention that there is no evidence to support the findings of the court and jury, and that the evidence does not support these allegations or findings.

The evidence shows that the press room in which appellee was working in dumping wax from wax presses is a room some 70 by 77 feet with a ceiling 17 feet 6 inches from the floor; that the oil which is brought into this room is chilled to something like 34 degrees in order that the wax contained therein can be separated therefrom by the use of presses made for that purpose. In this room there are some 15 of such presses. The walls of the room were insulated with cork in order to maintain a low temperature, which the evidence shows was ordinarily about 68 degrees. There were no openings in this room except the doors through which the workmen enter. These doors were ordinarily kept closed, leaving no opening in said room except an opening in the wall where a conveyer conveyed the wax from said room to a heating tank located just outside of the building, and within 6 inches of the wall of said room. This heating tank was heated by steam to the temperature of some 220 degrees, and in this manner the wax, when emptied into such tank was melted and carried away in liquid form. This tank was closed except for the opening where the wax conveyor entered same.

The evidence further shows that on occasions the steam escaping from this heating tank would enter into the room where appellee was working, through the opening in the wall where the conveyor carried the wax from the press room to the tank, and that at times a sufficient amount of steam would enter said room to cause, what some witnesses referred to as a mist or fog, which would sometimes become so dense a person could not see the light bulbs over their heads, neither could the workmen see their partners working across a table from them some 5 or 6 feet distance; occasionally the steam would enter the room in such quantities that some of the workmen would go outside of the building and cut the steam down; that on the occasion in question an unusual amount of steam was entering into the room, appellee testified that it was the worst that he had ever seen; that the work-

men were working fast and in a rush to finish dumping the press they were then working on and no one would take time off to go outside and cut the steam off.

The evidence further shows that the temperature was higher near the point where the steam entered the room than it was in other parts of said room. There is quite a bit of evidence in the record to the effect that the steam which entered the room had little affect on the temperature inside the room. Appellee testified in substance that on the occasion in question, while working fast and exerting himself more than usual, under the conditions above set out, that he became very warm; was sweating profusely and became weak, nervous and dizzy, and after having worked some one and one-half hours, under such conditions, they completed dumping the press they were then working upon and his fellow workmen retired to a boilerroom where they could dry off and keep warm, while the appellee, because of feeling weak and dizzy, stopped on the outside of the building to get the benefit of the fresh air, and that he became hoarse and caught cold; that he worked on for some three days thereafter at which time he was feeling so badly from what he took to be a bad cold that he was compelled to lay off from his work, and has not been able to do any work since.

The evidence further showed that from that time on the appellee has been very nervous, fractious and unsteady on his feet. It further shows that appellee went to work for the Magnolia Petroleum Company on the 29th day of November, 1943, at which time he had syphilis and that the Company doctor gave him what are called shots for his syphilitic condition from January, 1944 until the holidays of 1945, at which time they discontinued giving such shots, giving as their reason that he had had enough; that during the time appellee worked for the Magnolia Petroleum Company from 1943 to 1946 he was a good, hard worker and that he did his part of the work.

Medical testimony offered by appellee is to the effect that appellee is now suffering from paresis and is totally and permanently disabled. It further shows that overheating and exertion could cause an activation of syphilis and produce paresis. In answer to a hypothetical question, the doctor testified that, in his opinion, overheating and exertion described in the hypothetical question, based upon the evidence in this case, brought about or had something to do with producing the paresis in appellee.

He further testified that a person could become overheated in a low temperature if the humidity was high and that steam coming in contact with cool air or cool pipes would produce high humidity. As stated before, it was shown that the humidity in the press room where appellee was working was so high that some of the witnesses referred to the condition as a mist.

The evidence also shows that if a person has had syphilis, or has had a dormant syphilis, a latent syphilis, where it has not demonstrated itself over a long period of time, and a person is able to work, that any shock or severe illness, such as overheating which is evidenced by dizziness, weakness, profuse sweating and nervousness, could possibly lead to an aggravation of his dormant condition, light it up and make it active.

There is other medical testimony in the record to the effect that overheating of the body could light up the syphilis and bring on paresis. It is further shown by the medical testimony that where a person is overheated, to the extent that he becomes nervous and dizzy, it indicates that some harm has been done to the heat regulating mechanism of his body. We attach no importance to the testimony of appellee that a cold was the producing cause of his condition. He is an uneducated man, and his opinion as to the producing cause of his condition has no probative force.

■ That heat exhaustion constitutes personal injury within the contemplation of the Workmen's Compensation law of this State, Vernon's Ann.Civ.St. art. 8306 et seq., seems to be well settled. See O'Pry v. Security Union Casualty Co., Tex.Com. App., 1 S.W.2d 590, 61 A.L.R. 216; Herbert, et al. v. New Amsterdam Casualty Co., Tex.Com.App., 1 S.W.2d 608.

■ We are of the opinion that the evidence in this case was sufficient to justify

the trial court in submitting to the jury the issues as were submitted and supports the findings made by the jury in answer to such issues, and brings this case within the rules announced in the case of Texas Employers' Ins. Ass'n. v. Parr, Tex.Com.App., 30 S.W. 2d 305; see also Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464; Carter v. Travelers Ins. Co., 132 Tex. 288, 126 S.W.2d 581; Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026; Texas Employers' Ins. Association v. Burnett, 129 Tex. 407, 105 S.W.2d 200.

By appellant's 13th point, it complained of the action of the trial court in refusing to reopen the case and permit appellant to read in evidence a portion of the testimony given by witness, Robert S. Reese, in an oral deposition taken by the parties, during the process of the trial, to the effect that the vapors which entered the press room where appellee was alleged to have been overheated did not appreciably change the temperature on the inside of the press room. The facts relating to the Court's action in this matter are reflected by the bill of exceptions, and are to the effect that the deposition in question was taken and reduced to writing, and filed with the Clerk at 9 o'clock a.m., December 20, 1946; that in the late afternoon of December 19, 1946, the court having asked the attorneys if both sides had concluded the testimony, and having received an affirmative reply, the court discharged the jury until the following morning, at which time the charge was ready to be read to the jury.

In the qualification of the bill, the trial judge says: "Said testimony having been taken prior to the announcement of all parties that they had no further testimony and after both parties had rested; and if either party had desired to introduce said evidence, either party could have done so by calling the reporter who took the testimony to read same to the jury, and it further appearing that said testimony was actually written up and could have been read to the jury on the afternoon that all said parties rested their case; and either party could have requested said court to not close the testimony without having said

testimony of said witness Reese read, and the court having accepted said parties' announcement that said parties rested and having instructed said jury to not return until the next morning until 10 a.m., at which time the charge was to be submitted to said jury, and said attorney for defendant not having requested that said testimony be heard until the next morning when the court was ready to submit said case to the jury and said defendant's counsel having stated in response to question by the court that said evidence was only cumulative, said request to reopen was denied and said cause was immediately submitted to the jury."

We find in the transcript immediately following the bill of exceptions what purports to be the deposition of the witness Reese, which referred to by the parties as being the deposition in question. It appears in this deposition that witness Reese had not seen the room or been about the room in question where appellee was working for some 10 years. The matter of reopening the case for the purpose of admitting additional testimony is clearly within the discretion of the trial judge, and his action in such matters will not be disturbed by an appellate court unless it plainly appears that such discretion has been abused. Under the circumstances here presented, we decline to hold that the action of the trial court in refusing to reopen the case and permit appellant to offer in evidence the deposition of Reese, or a portion thereof, was an abuse of discretion such as to require a reversal of this case. Could it be said that such action was an abuse of discretion, we are of the opinion that the evidence tendered is not of sufficient importance to appellant's defense as to require a reversal. In support of our conclusion that no abuse of discretion is shown, see Smith's Heirs v. Hirsch et al., Tex.Civ.App., 197 S.W. 754; Grayson County v. Harrell, Tex.Civ.App., 202 S.W. 160; Mantel v. Mitchell, Tex.Civ.App., 293 S.W.835.

It follows from what we have said that we are of the opinion that no reversible error is shown. Accordingly each of appellant's points are overruled and the judgment of the trial court is affirmed.