C. L. BARMORE, Appellant,

v.

SAFETY CASUALTY COMPANY, Appellee.

No. 6596.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 13, 1962.

Rehearing Denied Jan. 9, 1963.

John Seale, Jasper, for appellant.

James T. Fitzpatrick, Midland, Wardlow Lane, Center, for appellee.

McNEILL, Justice.

Appellant sought benefits under the Workmen's Compensation law for total and permanent incapacity resulting from an alleged injury of March 9, 1960. Since judgment was against him, the parties here will be referred to as they were in the trial court.

In answer to the first special issue submitted to it, the jury found that plaintiff had not sustained an injury on or about March 9, 1960. Seeking to set aside the judgment of the lower court and for remand, plaintiff urges a single point of error. This point asserts that, since the charge of "recent fabrication" had been leveled by defendant at plaintiff, the trial court erred in excluding the testimony of plaintiff's wife in rebuttal that he told her the morning after his claimed injury that he had been hurt on the job.

The question whether plaintiff had had an accident and sustained any injury on the occasion in question was vigorously contested. To put the question in proper perspective, we set forth a summary of pertinent events as they developed at the trial. Plaintiff was the first witness taking the stand and on direct examination, after having told about being employed by Socony-Mobil Oil Company as a tank-truck driver, stated that the night of March 9th, while driving along the highway some electric wires in the motor of the truck shorted and caught on fire. Upon discovering this he immediately pulled his truck off the highway and, just before he stopped its roll, he jumped out of the cab and claimed to have injured himself doing so. After waiting about an hour beside the road, another employee of the company, Sterling Hoke, coming from the opposite direction stopped his truck and plaintiff told him about the motor catching on fire. Plaintiff was then asked whether he told Sterling Hoke at that time that he had gotten hurt, in answer to which he said he did. He testified that Hoke flagged a car for him and the driver of that car brought plaintiff to the inspection station in Logansport, Louisiana. After he reached this inspection station plaintiff telephoned his boss, Zee P. Brooks, and reported the break down of the truck. After staying at the inspection station about four hours he caught a ride with his co-employee Hoke, who was then returning from a trip and going back to Center, where plaintiff lived.

On the following cross-examination, plaintiff stated, while he did not remember, he might have mentioned to Brooks that he had gotten hurt. He was then asked whether he had seen a doctor L. S. Oates after his claimed injury and whether he told him of his injury. Plaintiff said he did not remember doing so. He was then asked whether he had any explanation for this, and he stated, "No, sir, I don't." In reference to the way the accident happened, he was asked on this examination, "Of course, you had no skinned places on you? No, sir, not * * *" Then he was asked, "You had no bruises to show anybody. You had no signs on you anywhere? A. No, sir." When asked whether he fell on his hands when he jumped from the truck, he said he could not answer that. Then: "Uh-huh. But you did not skin your hand and you had no skins any place on you? A. No, sir." A short time later in this cross-examination, defendant's counsel stated "As a matter of fact, don't you know you didn't have any accident there. You just had your truck short out and you stopped and first man come along, you didn't tell him you had any injury did you? A. I told him the truck was on fire." He was then asked if after he went to the inspection station "You didn't tell that man about being injured did you? A. I did." Then he was asked whether he told Brooks on the 'phone that he had gotten hurt, to which he stated he did not remember. Plaintiff was pressed for not having told Brooks about any injury, and in answer to this he said he had no reasonable opportunity to do so and that he knew that there was going to be some men laid off and he wanted to hold his job. As a matter of fact he was let out about two weeks after March 9th. Then defendant's counsel stated:

"Q. Yeah. And he finally let you out and then you decided to file this claim and then you left him—you ever seen Dr. Dickerson up till then? A. No, sir.

"Q. Till you decided to make a case and when you decided to make a

case, you started hunting those kind of doctors didn't you? One that would swear there was something wrong with you? A. I didn't hunt Dr. Dickerson at all.

"Q. Well, did you hunt the lawyers and the lawyers hunted the doctor for you? Who gave you this doctor's name? A. Well, I had heard of Dr. Dickerson.

"Q. Well, did you see your lawyer here first? A. Yes, sir.

"Q. And from him did you get Dr. Dickerson's name? A. Yes, sir.

"Q. Uh-huh. And so at the time you got Dr. Dickerson you really wasn't trying to get treated, you was trying to file a lawsuit wasn't you? Trying to make out a case? A. We had talked about it."

After the above took place, plaintiff was then questioned as to who the man was who took him into the weighing station at Logansport. While he could not recall the man's name, he described him well and he was located and the man, C. R. Baker, later testified for the defendant to the effect that he did not remember plaintiff mentioning anything about an injury to him. In this connection plaintiff himself had previously testified that he did not remember telling Baker about his injury. Defendant also produced the weighing station witness who stated that while he recalled the incident when plaintiff stayed at the station March 9, 1960, to his knowledge plaintiff did not mention that he had gotten hurt. He heard his conversation with Mr. Brooks on the 'phone but did not remember that plaintiff mentioned his injury to Mr. Brooks. Defendant also placed Brooks on the stand, who testified that while plaintiff had several opportunities to tell him of the injury, he never mentioned it to him either on the telephone or in person. Defendant produced Dr. L. A. Oates, who also testified that insofar as he could recall plaintiff never mentioned an injury to him; that his record listed no such injury and if he had been told thereof, he would have made a note of it.

After defendant rested, plaintiff placed his wife on the stand in rebuttal. The following transpired, while plaintiff's counsel was examining her:

"Q. Now then, after he had been in Louisiana, the time when his truck got on fire, when he came back, did he tell you anything about getting hurt? A. Yes he did.

"Q. What did he tell you? A. Well, he—

"MR. LANE: Just a minute, I was listening here. We would object to what he told her some several hours or 6 or 8 hours after he came in. Wouldn't be res jeste.

"COURT: Sustain the objection as to what he told her.

"Q. But did he tell you he got hurt? A. He did.

"MR. LANE: Well we—that's the same thing.

"MR. SEALE: Now your Honor, the whole case, every witness he's brought up here, he said 'Did he tell you he got hurt' 'Did he tell you he got hurt.' That's the big issue in the case. Now if he can ask his witnesses whether he told them, I think I ought to be able to.

"MR. LANE: That's different. He's the plaintiff. We're the defendants. We've got a right to ask that but he can't ask a self-serving declaration of that type. We've got them as admissions from him but he can't put this witness on unless it's res jeste.

"MR. SEALE: Silence of a witness can't be admission—

"MR. LANE: Certainly can be.

"MR. FITZPATRICK: If your Honor please Mr. Barmore testified he told these people things. We brought witnesses on to show that he had not. That's admissible under the hearsay rule.

"COURT: I'm going to exclude what he told her.

"MR. SEALE: Note our exception. And so that we won't disturb the proceedings, may it be understood I may complete by bill later in the absence of the jury.

"COURT: Very well."

The following stipulation was made at the close of the evidence:

"MR. SEALE: Can we stipulate her testimony would have been that he told her he got hurt?

"MR. FITZPATRICK: I guess so John.

"MR. SEALE: I assume—it seems obvious that's what she was going to do.

"MR. FITZPATRICK: Yes."

Plaintiff insists that as the issue of injury was hotly contested with the charge of "recent fabrication" having been thrown at him, plaintiff's wife should have been permitted to so testify in rebuttal, and that her testimony may thus have been sufficient to cause the jury to find that he had received an injury on the occasion in question. Defendant counters this upon several grounds: first, it denies that the charge of "recent fabrication" was made. In view of defendant's vigorous cross-examination of plaintiff, we hold that the charge was made. In fact, the charge was expressly made in this cross-examination twice. This is so in the above quoted statement: "As a matter of fact, don't you know you didn't have any accident there" and in the latter quotation, "Till you decided to make a case and when you decided to make a case, you started hunting those kind of doctors didn't you?

One that would swear there was something wrong with you."

Undoubtedly the defendant has the right to produce testimony to meet evidence presented by plaintiff that he had sustained an accident, but the cross-examination went much further than this. In addition, although plaintiff did not say that he told Baker, who brought him into the inspection station, that he had gotten hurt, defendant produced him and he testified he had no memory that plaintiff mentioned that he had gotten hurt. Plaintiff stated he did not remember whether he told his boss that he had gotten hurt when he talked to him on the 'phone. Brooks, when placed on stand by defendant, testified plaintiff never mentioned receiving any injury. And though plaintiff had testified that he did not remember telling Dr. Oates he had gotten hurt, defendant produced Dr. Oates, who stated that plaintiff had not told him about his injury. Thus, the defendant, and not plaintiff, undoubtedly initiated the charge of "recent fabrication." In this respect the present case differs from Skillern & Sons, Inc. v. Rosen, (Tex.Sup.Ct.) 359 S.W. 2d 298.

■ When a witness is charged at the trial with recent fabrication, his former consistent declarations are admissible to corroborate his testimony, provided such declarations were made at a time when he had no motive to misrepresent the fact stated by him. It was held in Aetna Ins. Co. v. Eastman, 95 Tex. 34, 64 S.W. 863, and in Skillern & Sons, Inc. v. Rosen (Tex. Sup.Ct.) 359 S.W.2d 298, that prior consistent statements of the plaintiff were inadmissible for the reason that in each case plaintiff had the motive (whether influenced thereby or not) to falsify the fact. Or as alternatively stated in the Skillern case, after the time when its ultimate effect and operation could be foreseen. The prior consistent declarations in both Eastman and Rosen took place shortly after the event the plaintiffs claimed took place. Although the fire loss had not occurred in the former case and the consistent declaration was

made the day after notice of taking out the second policy was given to the insurance company's agent, the court said (64 S.W. p. 864): "It is nevertheless true that at the time of the alleged statement it was to his interest to make it."

■ There is, however, a modification of the proposition above that prior consistent declarations to be admissible must be made before motive to misrepresent exists. This modification comes into play if defendant raises the charge of recent fabrication and produces witnesses who testify plaintiff was silent about his accident at a time when he could have been reasonably expected to speak of it and did not do so. It is then permissible for plaintiff to show by other witnesses that he did speak of the accident and injury at or near those particular times. This we think are the holdings in Houston & T. C. Ry. Co. v. Fox, 106 Tex. 317, 166 S.W. 693, and Texas Employers' Ins. Ass'n. v. Thames, Tex.Civ. App., 236 S.W.2d 203 (W.R.), as interpreted in Skillern v. Rosen, supra. In the latter circumstances the consistent declarations appear to be admissible even after plaintiff's claim is filed, provided there was not then, (at the time of making such declaration or claim), a motive to rebut the issue of recent fabrication. At the time, 6 or 8 hours after he had returned home, when plaintiff told his wife he had gotten hurt, there existed no charge of recent fabrication. In fact, defendant produced Dr. Oates to show that several days later, when plaintiff went to the doctor plaintiff did not mention getting hurt. This evidence was tendered upon the ground that it would have been the usual and customary thing for plaintiff to have then told his doctor, if he had gotten hurt. What Judge Hamilton said in the Skillern opinion, of the holding in the Texas Employers' Ins. Ass'n. v. Thames, supra, is presently pertinent (359 S.W.2d p. 304):

"* * * The notice of injury and claim in the Thames case was prepared before any motive could have existed to rebut the issue of recent fab-

rication raised by the failure of the plaintiff to tell the doctors of his general injury."

■ Defendant further asserts that the error, if any, of the court was harmless for the reason that the record shows that Mrs. Barmore's testimony that her husband did tell her he got hurt was not stricken and the jury could have considered it. Ordinarily when testimony has once been admitted, motion to strike the inadmissible part should be made before it is considered as excluded by the court. Two factors, however, persuade us that the Court, as well as the jury, must have considered that any reference made by her that her husband told her he had gotten hurt was withdrawn from consideration. The first factor is the language of the court, "I'm going to exclude what he told her." After plaintiff's wife had finished testifying and at the close of the case, a stipulation was made by counsel that plaintiff's wife's testimony "would have been that he told her that he got hurt." If it was not considered this evidence had been stricken and expunged from the record, why the need of stipulation?

■ Defendant lastly urges that the trial court's exclusion of Mrs. Barmore's testimony was harmless within the purview of Rule 434, Texas Rules of Civil Procedure. In this connection it is stated that plaintiff's testimony to the effect that he told Hoke of the accident, which was not denied, served as contradiction and answer to the testimony produced by defendant. We must measure the error by the test: Did it amount to such a denial of appellant's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment? Much consideration has been given this question. Who can say what effect the tendered testimony may have had upon the jury? Would the jury have attached more weight to what plaintiff had testified if his wife had been allowed to tell that he told her he had been hurt. Her testimony would not have been that he got

hurt—which was the question directly in contest; it would have been proof of a secondary nature—that he told her he got hurt. Thus her testimony rested directly upon her husband's. The primary fact of injury must rest squarely upon plaintiff's own testimony as there were no other witnesses present. Thus his veracity alone in the final test was at issue. His wife's testimony, if allowed, may have been sufficient to cause the jury to have decided that he had gotten hurt. But we cannot say that it *probably* did cause the rendition of an improper judgment.

In answer to issue No. 3 the jury found he sustained no incapacity as a result of the injury, if any, of March 9, 1960. And in answer to issue No. 11 the jury found his incapacity, if any, was due solely to diseases, etc., wholly disassociated with his injury of March 9, 1960. These findings are not attacked. It does not appear how the excluded testimony would have had any material influence upon these findings. State v. Parrish 159 Tex. 306, 320 S.W.2d 330.

The judgment is affirmed.