**PAPCO, INC., Appellant,**

v.

**Jimmy EATON, Appellee.**

**No. 8227.**

Court of Civil Appeals of Texas, Texarkana.

Jan. 28, 1975.

Rehearing Denied March 25, 1975.

Lancaster Smith, Harvey L. Davis, Dallas, James H. Verschoyle, Atlanta, for appellant.

Carl Roth, Franklin Jones, Jr., Marshall, for appellee.

CHADICK, Chief Justice.

During construction of a manufacturing plant for International Paper Company in Cass County, Texas, Papco, Inc., the general contractor for the project built and supplied a scaffold for the employees of Southern Electrical and Piping Corporation, a subcontractor hereafter called Sepco, to use in performing construction work. Jimmy Eaton, an employee of the subcontractor, was on the scaffold deck engaged in doing overhead welding just prior to sustaining injury. The scaffold's deck or work floor where Eaton worked had two by six inch "toe boards" nailed to frame its outer edges and form a six inch high rim around the deck's topside. The toe boards were useful in preventing tools, material or other objects on the deck from being accidentally dislodged and, as shown by evidence in the record, the boards were fre-

quently used as handholds by persons climbing up or down the scaffold ladder. Eaton immediately before injury, began to climb down the scaffold on the steel ladder built into the framework and in lowering himself Eaton grasped, as a handhold, the toe board next to the ladder. The toe board pulled loose causing Eaton to fall backwards to the ground some twenty-five to thirty feet below. Eaton's injury was severe.

■ Whether Papco, the general contractor is considered an occupier of land or the supplier of a chattel (the scaffold), its liability for injury to Eaton is that of an occupier of land to a business invitee thereon. Delhi-Taylor Oil Corporation v. Henry, 416 S.W.2d 390 (Tex.1967); McKee General Contractor Inc., v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); Roosth & Genecov Production Co., v. White, 152 Tex. 619, 262 S.W.2d 99 (1953); Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425 (1950).

Warren Aulds, Superintendent in charge of all Sepco pipefitting as well as supervisor over the particular welding work Eaton was performing at the time of injury, testified that Papco management personnel had warned him, Aulds, that it was dangerous to use scaffold toe boards as handholds in ascending and descending the scaffold. He swore that aside from any warning from Papco management, he personally knew such use to be dangerous and had, through channels designated by Sepco's contract with the pipefitter union, warned the men under his supervision of the danger of using scaffold toe boards for handholds.

■ The opinion in Delhi-Taylor Oil Corporation v. Henry, supra, declares the law to be well settled that an occupier of land (such as Papco) may be relieved of liability for harm to invitees thereon (such as the subcontractor's employee Eaton) resulting from dangerous conditions on the premises that are not open and obvious by taking proper precautions to protect such

invitees from danger or by warning them thereof. The rule is supported by Halespeska v. Callihan Interests, Inc., 371 S.W. 2d 368 (Tex.1963) and Western Auto Supply Company v. Campbell, 373 S.W.2d 735 (Tex.1963). On the basis of policy discussed therein Delhi-Taylor further holds that "an adequate warning to an independent contractor or one supervising his work will discharge the duty of the landowner or occupier to warn the employees of the independent contractor" of a dangerous condition on the occupier's premises.

The trial court undertook to allow the jury to determine whether or not the danger warning given by Papco was adequate. The two special issues submitted and the jury's answer thereto are as follows, to-wit:

"Sp. Issue No. 5: Do you find from a preponderance of the evidence that on the occasion in question the Defendant, Papco, through its agents, servants or employees, had given adequate warning to the Sepco Supervisor, Warren Aulds, that there was a risk of harm to a person using the toe board as a handhold in descending a scaffold.

(Jury) Answer: We do not.

Sp. Issue No. 6: Do you find from a preponderance of the evidence that on the occasion in question the Sepco's Supervisor, Warren Aulds, had full knowledge that there was a risk of harm to a person using the toe board as a handhold in descending a scaffold.

(Jury) Answer: We do not."

Papco moved the trial court to disregard the jury's verdict on both special issues because "the uncontradicted and undisputed testimony of Warren Aulds, the Sepco supervisor, was that he had been given adequate warning, time and again, that there was a risk of harm to the person using the toe board as a handhold in descending a

scaffold and that at the safety meetings he had acquired full knowledge that there was a risk of harm to a person using the toe board as a handhold in descending a scaffold."

■ Attention has not been called to any direct evidence, except that of Aulds bearing upon the issues. Warren Aulds was an interested witness and his uncontradicted testimony merely raised an issue of fact for jury determination. It was not conclusive. A witness in a case is *interested,* and the credibility and weight to be given such witness' testimony is a question solely for the jury, when the record shows a reasonable basis for the witness harboring a partisan attitude towards the outcome of the case. 98 C.J.S. Witnesses, § 538; Tex. Jur. 2d Witnesses, Sec. 374. The testimony of an interested witness only raises an issue for jury determination; it is only when such testimony is "clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach" the witness that such testimony *must* be given probative effect. Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company, 391 S.W.2d 41 (Tex.1965); Tex.Jur. 2d Witnesses, Sec. 373. Aulds candidly testified that he could not expect to progress as a contruction superintendent if he was indifferent to safety standards and procedures or if the incidence of employee injury, while under his supervision, was unusually high. The jury could have reasoned that it would have been to Aulds' interest to show that Eaton was injured as a result of Eaton's independent conduct and violation of warnings; that Aulds was influenced by self interest to testify that Eaton's injury was not the result of Aulds' lack of knowledge of danger or failure to impart it; or that Aulds was interested in minimizing or shifting from himself responsibility for the occurrence.

During the trial of the case George Kell and James J. Turchi were employed at the International Paper Company's mill in Cass County, some twenty-five miles from Linden the county seat and site of the trial. Kell was employed in the plant's maintenance department and Turchi as safety director. On May 8, 1972, the day Eaton was injured, both were employed in plant construction at the paper mill site. Kell was a pipefitter foreman for Sepco under general supervision of Warren Aulds and Turchi was safety director in charge of the construction safety program acting, according to his testimony, for Papco and Sepco, as well as International Paper. At trial time both Kell and Turchi were amenable to subpoena as witnesses under the provisions of Texas Rules of Civil Procedure rule 176.

Testimony closed and the parties rested in the introduction thereof the afternoon of Wednesday, October 2, 1973. The judge and counsel for the parties were engaged that afternoon with preparation of the charge to the jury. At ten o'clock the next morning Thursday, October 3, counsel for Eaton requested leave to reopen the case to present Kell as a rebuttal witness. Objection was made by Papco on the grounds that the witness had been available to Eaton by subpoena or otherwise throughout the trial and that Aulds was no longer available to testify as he had returned to the State of Oregon. The court reopened the case to permit Kell to testify. At one o'clock Thursday afternoon Kell was produced as a witness and interrogation ended shortly after two o'clock. At such time Papco's counsel requested and was granted a short recess. Thereupon such counsel telephoned Turchi at the International Paper plant and was told by Turchi, that he, Turchi, could be present in court in twenty-five to thirty minutes. Turchi was instructed to come in and did appear at the courthouse within such time. However, when counsel for Papco returned to the courtroom and reported his desire to offer Turchi as a witness, the request was denied. In the bill of exception preserving Turchi's testimony the trial judges' questions developed that Turchi resided within one hundred miles of the county courthouse

and had been interviewed by Papco's counsel prior to trial and had been available to testify as a witness for Papco on thirty minutes notice throughout the trial.

Aulds' testimony adduced in the trial in chief was noticed earlier. In brief, he said that Papco supervisory personnel had warned him of the danger of using a toe board as a handhold and that he passed the warning on to to his general pipefitter foremen, including Kell, with instructions that the warning be given employees. Likewise adduced in the trial in chief, though in behalf of Eaton, was testimony of two pipefitter foremen. The first, Jimmy Brown, a crew foreman, said he could not recall mention being made by anyone in a safety meeting that toe boards were not to be used as a handrail. He also said that safety meetings were held by a general foreman and not by a superintendent or the safety director. The second to testify, Billy Pat Adcock, a general foreman, stated that neither Aulds nor anyone else instructed him or any workman on the job not to use toe boards as handholds and that he was never in a safety meeting with Aulds, though Aulds had been superintendent over him at various times.

After the case was reopened, on direct examination Kell testified that Aulds did not tell him that he, Aulds, had been told by Papco people not to use toe boards as handholds, nor had Aulds instructed him, Kell, to instruct those working under him not to so use toe boards. Kell also testified that his crews held safety meetings every Monday morning and made written reports thereof to Aulds. On cross-examination Kell testified his safety meetings were rather informal and that Aulds did not attend. Climatically, on redirect examination Kell testified that Aulds never told him, Kell, not to use toe boards as handholds and if Aulds so testified Aulds' word could not be relied upon.

James J. Turchi's testimony, as incorporated in a bill of exceptions, was in part as follows:

"Q. Now, in your meeting before May 9, 1972, did you ever have any discussion with Mr. Aulds, concerning the use of toe boards, as handholds on a scaffold?

A. Yes.

Q. And what were those discussions?

A. We had had an accident prior to this one, in the power plant . . . one of these board had pulled loose. The man did not suffer any severe injuries, but we had recommended to these superintendents that they have people not grasp the toe boards in climbing down . . . to use the handrails or upright posts . . . or the ladder on the scaffold.

Q. Was that about the month or six weeks before . . .?

A. Approximately six weeks prior to this accident.

Q. When you had that meeting with them, was it Papco people there present?

A. Papco and Sepco Superintendents were there."

An analysis of Kell's and Turchi's testimony shows that the testimony of both would have been admissible in the case in chief, insofar as it was admissible at all; that it was cumulative of testimony previously introduced and that its effect was to bolster and fortify other evidence in the record. Additionally, Kell's testimony tended to discredit Aulds as a witness while Turchi's testimony that Aulds attended a safety meeting tended to rebut, by explanation rather then contradiction, the implication of Kell's statement that he never saw Aulds at a safety meeting. Turchi's testimony shows Aulds attended a safety meeting for Papco and Sepco Superintendents when the toe board danger and warning was under discussion.

Papco arraigns the trial court's action associated with reopening the case as re-

versible error on the ground that, after both parties had closed and rested in the presentation of testimony, the trial court allowed Eaton to reopen the case and present the testimony of George Kell, a witness who lived within one hundred miles of the courthouse etc. but:

(1) refused to permit Papco to introduce Turchi's testimony in rebuttal thereof;

(2) over Papco's objection that Aulds, a witness vital to rebuttal of Kell's testimony, had already returned to his home in Oregon;

(3) refused to allow Papco to reopen and produce the testimony of Turchi, who lived within one hundred miles of the courthouse and had been available to Papco throughout the trial.

Though each particular ruling of the trial court is the subject of a separate point of error the disposition of these issues have a nexus and should not be considered in isolation from each other.

■ When the case was reopened, evenhanded procedure, "what's sauce for the goose is sauce for the gander", would suggest that the trial judge delay proceedings a reasonable time to allow Papco to present Turchi as a witness. But the question is too complex to be settled by a simplistic folk maxim of fair play. A trial judge is afforded a wide discretion * in the admission of additional evidence "where it clearly appears to be necessary to the due administration of justice". Tex.R.Civ.P. 270. No Texas case has been found that is precisely in point on the question here. In The Balcones Corporation v. Sutherland, 318 S.W.2d 691 (Tex.Civ.App. San Anto-

nio 1958, writ ref'd n. r. e.), the trial court permitted a plaintiff to reopen and introduce evidence. The appellate court found no error and justified its decision in part upon the circumstance that the defendant was not deprived of the right to offer rebuttal evidence. In discussing the issue the court said "this was a matter within the discretion of the trial court, and unless it be demonstrated that the trial court abused its discretion, such action is not reversible error.

*"In this case it was not shown that the appellant (defendant) was harmed in any respect by the trial court's action, nor was it shown that it was deprived of the right to offer any rebuttal evidence that it might have had in reply thereto"* (Emphasis Added). See also Union Central Life Ins. Co., v. Boulware, 238 S.W.2d 722 (Tex.Civ. App. Beaumont 1951, no writ). Cases from other jurisdictions support the proposition that when a court reopens a case for one party the opposite party should not be deprived of an opportunity to offer rebuttal testimony in reply thereto and condemns refusal in such instances as reversible error. See: Daniel v. Tower Trucking Co., Inc., 205 S.C. 333, 32 S.E.2d 5 (1944); Pavlis v. Atlas-Imperial Diesel Engine Co., 121 Fla. 185, 163 So. 515 (1935); Davis v. Arkansas Best Freight System, Inc., 393 S.W.2d 237 (Sup.Ct. Arkansas 1965); 88 C.J.S. Trial, §§ 101, 103, 104, 110 and 111.

■ The question of whether or not to permit Turchi to testify arose in the latter part of the week when extravagant use of time might disrupt the trial calendar of cases that followed. Additionally, the trial judge was immersed in the exacting task of preparing a very intricate jury charge. In this period the judge was necessarily weighing counsel's suggestions and consid-

---

* Texas Courts have frequently stated that such discretion should be liberally exercised as it is in the interest of justice to permit both sides to fully develop a case. See: Russell v. Russell, 443 S.W.2d 569 (Tex.Civ.App. El Paso 1969, no writ); McRoy v. Riverlake Country Club, 426 S.W.2d 299 (Tex.Civ.App. Dallas 1968, writ ref'd n. r. e.); Lackey v.

Perry, 366 S.W.2d 91 (Tex.Civ.App. San Antonio 1963, no writ); Hill v. Melton, 311 S.W.2d 496 (Tex.Civ.App. Dallas 1958, writ dism'd); State v. Parkey, 295 S.W.2d 457 (Tex.Civ.App. Waco 1956, writ ref'd, n. r. e.); Stroud v. Temple Lumber Co., 284 S.W.2d 909 (Tex.Civ.App. Beaumont 1955, writ ref'd, n. r. e.).

ering objections to the charge, while contending with the numerous distractions that normally beset a busy trial judge. In this atmosphere it was difficult to give the question of reopening calm and deliberate consideration or to foresee the ramifications and consequences of reopening the case. The authorities just noticed appear to hold that testimony rebutting that offered by the party reopening the case may be introduced as a matter of right. See also Gendke v. Travelers Insurance Company, 368 S.W.2d 3 (Tex.Civ. App. Waco 1963, no writ) and Tex.R.Civ. P. 265. In considering the feasibility of reopening a case for additional testimony the trial judge is obligated to consider the question in its entirety, that is, the rights of both parties when the case is reopened. Unless the case may be reopened and the right of each party to introduce evidence preserved, the motion to reopen should be denied. A trial judge is not vested with discretion to harmfully deprive a litigant of a matured right to produce rebuttal testimony.

■ The trial court was aware that through no fault of Papco, Aulds was not available as a witness and the record contains no suggestion that at the time the case was reopened Papco might be able to obtain testimony from any source tending to rebut evidence Eaton might produce in the reopened case. It was obvious that reopening would to some extent, favor Eaton unless Papco was able in short order to find a source, other than Aulds, of rebuttal evidence. Reopening, under the circumstances, did not clearly appear to be necessary in the due administration of justice.

■ Numerous cases, some of which were earlier set out in a footnote, establish the rule that whether or not a case will be reopened for reception of additional evidence is a question addressed largely to the discretion of the trial court. See 56 Tex. Jur.2d Trial, Sec. 118 et seq. and cases there footnoted. The rule is generally stated in the context of a record showing that only one party moved to reopen. The record here presents a distinctly different situation. Here both parties moved to reopen but only one party was allowed to do so. Eaton was permitted to reopen and adduce cumulative testimony but at the same time Papco was denied permission to reopen or to introduce evidence of the same nature. When the case was reopened Eaton presented testimony that tended to bolster and fortify witnesses that testified in the case in chief. Such testimony tended to exclude the probability that Aulds attended safety meetings or that he could have received a toe board warning from a Papco supervisor at a safety meeting. Turchi's testimony, had the case been reopened to receive it, would have corroborated and strengthened Auld's testimony that Papco supervisors had given him the toe board danger warning. Reopening to permit one party to offer cumulative testimony and at the same time refusing to reopen to permit the opposite party to introduce similar evidence is inconsistent and irreconcilable with Rule 270.

The skillful advocacy of the Eaton's counsel carefully exploited the testimonial record as it was allowed to be made. In jury argument Eaton's counsel asserted:

"I say Issue No. 5 on whether or not Papco had given adequate warning to Sepco supervisor Aulds that they were given to the person using the toe board as a handhold in descending the scaffold falls for want of meeting the burden of proof for this reason: Warren Aulds stands before the jury as a thoroughly impeached witness. He has told you from that witness stand that he went and told the general foreman not to use those toe boards as handholds. *The general foreman has sat in here and looked you in the eye and he said Warren Aulds never told me any such thing.* No . . . . The warning, if given, was given to Aulds, where Ladies and Gentlemen . . . and it *was given to*

*Aulds by the man who was drawing his paycheck from the Defendant in this lawsuit. Now, why haven't they brought that man in here to look you in the eye and tell you that 'I gave him that warning'.* We say it fails for that reason; and the same holds true for each of No. 6 . . . 7 is essentially the same issue." (Emphasis Supplied)

Turchi was the only witness shown by the record to fit the description "the man who was drawing his paycheck from the Defendant" and the argument criticized Papco for not producing "that man" as a witness. Turchi's testimony, if admitted, would have removed a basis for this rather devastating argument as it tended to show where and who gave Aulds the danger warning, if it was given.

The record shows a strenuous contest in which the jury was required to answer critical issues on the basis of evidence. Deprivation of an opportunity to strengthen its own evidence or rebut and explain that produced by Eaton, under the circumstances shown, could only be harmful to Papco. In the respect noted, the trial court exceeded the freedom of action reasonably allowable to a court in the conduct of a case, and tilted the trial in favor of Eaton. Papco's thirtieth, thirty-first and thirty-second points of error are sustained. The trial court's action amounted to such a denial of the rights of Papco as was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

The case must be reversed and remanded for a new trial and it is so ordered. All points of error not expressly sustained have been considered and a majority of the court, but not the same majority in every instance, overrules all points of error that would require a disposition of the appeal different from that here ordered, as well as, all points upon excessiveness of the judgment and the insufficiency or great weight and preponderance of the evidence.

CORNELIUS, J., concurs.

RAY, J., dissents.

RAY, Justice (dissenting).

I dissent. The majority opinion ignores the pleading and jury finding that Jimmy Eaton was injured by reason of being furnished a defective chattel, as distinguished from a defect on premises controlled by a landowner. The opinion then proceeds to hold that appellant Papco had a "matured right" to have the case reopened so that it could submit a rebuttal witness simply by reason of the fact that the trial court had permitted appellee Eaton to reopen the case and produce a rebuttal witness. The subject of the sur-rebuttal testimony of Turchi had to do with whether or not the superintendent of Eaton's employer was warned of the danger arising from the use of a scaffold furnished by Papco. I believe that the jury findings were sufficient to sustain the judgment of the trial court without respect to any finding on an issue of warning, and further, that no showing was made that the trial court abused its discretion in refusing to reopen the case for Turchi's testimony.

In the petition on which the case was tried, Jimmy Eaton alleged that the scaffold from which he fell when injured was erected by Papco, Inc., to quote: ". . . for the express purpose of providing a place for the plaintiff to perform his labor." Additionally, that ". . . the defendant, in the customary course of its business, furnished a scaffold to the plaintiff for the purpose of providing the plaintiff with a place to perform his labor." There were further allegations that the scaffold was in a defective condition, ". . . in that the toe board was not properly and securely fastened to the scaffold, . . ." and that this created an unreasonable risk of harm to users of the scaffold, such as Jimmy Eaton.

There were alternative allegations that Papco undertook to furnish Eaton a scaf-

fold for his use in performing his labor, thereby impliedly warranting that the same was reasonably fit for its intended use; that it was so defective as to be unreasonably dangerous " . . . by reason of the toe board not being properly and securely fastened to the scaffold, . . ." and that this was a producing cause of the injuries of Jimmy Eaton.

In response to this pleading and the abundance of testimony, the jury made the following summarized findings: Papco employees created a dangerous condition by securing the toe board in question to the scaffold by using only two nails toed into the platform plank (Issue I); that the employees of Papco knew that or should have known of the existence of the dangerous condition just inquired about (Issue Ia); that Papco failed to exercise ordinary care to warn Jimmy Eaton of the existence of the dangerous condition inquired about (Issue Ib), which was a proximate cause of the injuries sustained by Eaton; and, finally, that the toe board would have been adequately secured to use as a handhold in climbing down the scaffold had Papco employees secured it with two nails in each end in addition to two nails toed into the platform plank (Issue III).

The testimony convincingly showed that Jimmy Eaton's employer, SEPCO, and its employees had nothing to do with the erection of the scaffold, which was built and furnished by Papco as being ready for use. All of the witnesses who testified as to the manner of securing the toe board that gave away with Jimmy Eaton, with the exception of SEPCO'S Superintendent, Warren Aulds, stated there were only two diagonally driven toe nails holding the board, and there were no nails driven horizontally at the end to secure the ends to the leading perpendicular boards. On cross-examination SEPCO'S Superintendent Aulds testified:

"Q. The truth of the matter is that it (the toe board) didn't have but two nails, driven in at an angle, if it didn't meet your standard?

A. It wouldn't meet my standard, no, sir."

The majority opinion ignores the pleading, evidence and jury findings just summarized, and concludes that whether Papco was an occupier of land or the supplier of a chattel, its liability for injury to Eaton is that of an occupier of land to a business invitee. I do not believe this holding properly disposes of the case, or can serve as a basis for reversal.

The majority opinion concedes that under Delhi-Taylor Oil Corporation v. Henry, 416 S.W.2d 390 (Tex.1967), the occupier of land is relieved of all harm resulting from dangerous conditions on the premises that are not open and obvious by warning of their existence. I do not believe the facts and jury findings of the present case bring it within the principles announced in Delhi-Taylor. In the first place, we are not dealing with a relationship between the occupier of land and an invitee, but rather with that existing between the manufacturer or supplier of a scaffold (chattel) and one using the scaffold for the purpose for which it was supplied. The duty of the supplier in this instance is to furnish a scaffold reasonably safe for its intended use, free from defects known to it or discoverable by the use of ordinary care. There is an additional duty to correct such defects upon discovery or warn the intended user of them.

In Roosth & Genecov Production Co. Inc. v. White, 152 Tex. 619, 262 S.W.2d 99 (1953) our Supreme Court considered whether there was a duty of inspection to forestall personal injury on the part of one who supplies chattels to another. In overruling the earlier case of Southern Oil Co. v. Church, 32 Tex.Civ.App. 325, 74 S.W. 797 (1903), 32 Tex.Civ.App. 325, 75 S.W. 2d 817 (1903) the Supreme Court held the duty to exist, and relied on the Restatement of Torts, Sections 392–393. In the

present text of the Restatement, the comment under Section 392 states that liability thereunder is determined by Sections 388–390. Section 389 is as follows:

"CHATTEL UNLIKELY TO BE MADE SAFE FOR USE.

One who supplies directly or through a third person a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, and who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character."

The central question in Roosth & Genecov Production Co., Inc. v. White, supra, was whether there was a duty of inspection of a chattel. In holding that there was, the decision of necessity held there was a kindred duty of manufacturing or constructing the chattel so that it would not be unreasonably dangerous for its intended use. Papco's role in constructing the scaffold more closely resembles that of a manufacturer than that of the occupier of land. In the case of International Derrick and Equipment Company v. Croix, 241 F.2d 216 (Fifth Circuit 1957) the court cited Roosth & Genecov Production Co., Inc. v. White, supra, as supporting this quotation from the opinion:

" 'A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its proba-

ble use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured.' Restatement, Torts, Section 395."

In *Delhi-Taylor*, supra, the danger involved existed by reason of a fixed condition on the premises, namely, a system of buried gas lines, a plat of which was furnished before work began. However true it may be that in some instances the relationship between the supplier of a chattel and one injured from its use may be "likened to that of an occupier of land," the present case bears no resemblance whatsoever to that relationship. To the contrary, we deal here with a situation where, at most, Papco negligently caused a change of condition of the premises to the injury of Eaton after his entry. Even had Eaton been a licensee, recovery would have been allowed for this negligence irrespective of any issue of warning. Texas-Louisiana Paper Co. v. Webster, 127 Tex. 126, 91 S. W.2d 302 (1936); Fisher Construction Company v. Riggs, 320 S.W.2d 200 (Tex. Civ.App. Houston 1959); remanded for proper application of the law as to the sufficiency of evidence; 160 Tex. 23, 325 S. W.2d 126 (1959), and affirmed upon remand, 326 S.W.2d 915 (Tex.Civ.App. Houston 1959); Houston Belt & Terminal Ry. Co. v. O'Leary, 136 S.W. 601, 604–605 (Tex.Civ.App.1911, writ ref'd); also see 40 Tex.Jur.2d, Negligence, Section 68, page 553.

Papco relies upon a generalized warning to the superintendent of Eaton's employer. It is undisputed in the testimony that Papco made no effort to warn Eaton or his employer of the dangerous condition of the scaffold arising from Papco's negligence in failing to secure the toe board with six nails, and employing only two nails for that purpose. The jury found this to have been the defect that made the scaffold dangerous, and that it would have been adequately secured, had it been fastened with six nails, as claimed by Papco. In this situation the question of whether or

not Aulds was warned as he testified, became wholly immaterial, and the case should not have been reversed by reason of a supposed error of the trial court in ruling on the evidence on this issue of warning. See Kanawha & Michigan Railway Company v. Kerse, 239 U.S. 576, 582, 36 S.Ct. 174, 60 L.Ed. 448, 451; Barmore v. Safety Casualty Company, 363 S.W.2d 355 (Tex.Civ.App. Beaumont 1962, writ ref'd n. r. e.); and 4 Tex.Jur.2d, Part 2, Appeal and Error—Civil Cases, Section 854, page 421. Even should it be considered that Aulds truthfully testified as to the warning given him and that given by him to the employees under him, yet the jury findings identified an entirely distinct danger from that which was the subject of this warning. The situation more nearly approaches that found in Guidry v. Neches Butane Products Company, 476 S.W.2d 666 (Tex. 1972) in which the Supreme Court held that construction plans of the premises furnished the employer, and excavations made by the employer were insufficient to constitute warning of a soft spot in the ground surface some four to six feet away from the excavations.

Apart from the foregoing considerations, the trial court did not abuse its discretion in refusing to permit Papco to reopen the case and offer the testimony of the witness Turchi.

What is required to constitute an abuse of discretion was set out in Grayson County v. Harrell, 202 S.W. 160, 163 (Tex.Civ. App. Amarillo 1918, writ ref'd) as follows:

". . . but it has been held that 'the abuse of discretion, to justify interference with the exercise of discretionary power, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' Citizens' Street Ry. Co. v. Heath, 29 Ind.App. 395, 62 N.E. 107; Anderson's Law Dictionary."

The concept quoted was approved by our Supreme Court in considering whether a trial court abused its discretion in refusing

a defendant's request for permission to withdraw answers filed prior to the filing of a plea of abatement in J. N. McCammon Inc. v. Stephens County, 127 Tex. 49, 89 S.W.2d 984, 986 (1936, opinion adopted). Furthermore, the same rule was specifically applied to measure the action of a trial court in refusing to reopen a case just before the charge was to be submitted to the jury for the purpose of the reading of a deposition already on file, in Safety Cas. Co. v. Malvoux, 204 S.W.2d 862, 865 (Tex.Civ.App. Beaumont 1947, writ ref'd n. r. e).

The record in this case will not sustain a finding that the trial court was prompted by "perversity of will, passion, partiality or moral delinquency" in refusing to permit Papco to reopen for further rebuttal testimony.

The background for the action of the trial court is not sufficiently set out in the majority opinion. In the presentation of Papco's case in chief, Warren Aulds testified on cross-examination that he told his general foreman, including foreman George Kell, never to use the toe boards on the scaffold as a handhold. Rebuttal witnesses were offered by Eaton, and the testimony closed on the afternoon of October 3, 1973. The rest of the day and the morning of October 4, the court and counsel were engaged in the preparation of the charge. At 10:00 A.M. on the morning of October 4, counsel for Eaton requested the court in the presence of counsel for Papco to permit reopening of the case in order to offer George Kell as a rebuttal witness. Permission was granted with the only objection by Papco being that its witness, Warren Aulds, had returned to Oregon. At 1:00 P.M., just prior to the reading of the charge to the jury, Kell appeared and disputed the testimony of Aulds concerning the warning. It developed that Kell had, after Eaton's fall, been requested by Papco's counsel to furnish safety records to him, which he did. Kell was on the stand until 2 P.M. Upon the completion of his testimony the case was ready to go to the

jury. A recess was procured by Papco, following which its counsel requested the court for a thirty minute delay in order to produce James Turchi as a sur-rebuttal witness. The request was refused.

The proffered testimony of James Turchi appears in the bill of exception, and none of it was in rebuttal to any of the testimony of George Kell. It may be true, as stated in the majority opinion, that the testimony of Turchi may have been admissible in the case in chief, but it certainly could not be used to rebut Kell's specific testimony that Aulds never warned him by showing transactions between the witness Turchi and persons other than Kell.

The bill of exception shows that James Turchi was a safety man for Papco, and had been contacted by counsel for Papco several months before the lawsuit and had cooperated with him in preparation of the defense. In these circumstances, no excuse whatever was presented to the trial court for Papco's failure to call Turchi as a witness in the presentation of its case in chief. Also, Papco having knowledge of what George Kell knew about the case, and particularly safety meetings and warnings by Aulds, the trial court could have reasonably concluded that it was incumbent upon Papco to make arrangements for the attendance of Turchi as a witness as soon as it learned of the intention of Eaton to call Kell as a witness. Had this been done, there would have been no occasion to request a delay of thirty minutes to produce the testimony.

The case should not be reversed. The trial court did not act through "perversity of will, passion, partiality or moral delinquency" in refusing Papco the right to re-open, nor would the proffered testimony of Turchi have been admissible on rebuttal had the right been granted. Furthermore, the appellant has wholly failed to meet its burden of showing that the action of the trial court in disallowing the proffered witness, Turchi, was " . . . such a denial of the rights of the appellant as was

reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Tex.R.Civ.P., Rule 434. A reversal of this case under the circumstances presented, is not warranted. The case took a long time to try, and all of the evidence related to the material issues in the case was presented by competent counsel for each of the parties. Reversal is not justified on the grounds set out in the majority opinion. I would affirm the judgment of the trial court.